EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Don Benigno Rodríguez Pérez y otra<br>    Peticionarios<br><br>v.<br><br>Don Roberto Gómez y otros<br>    Recurridos | Certiorari<br><br>2002 TSPR 28<br><br>156 DPR _____ |

Número del Caso: CC-1999-464


Fecha: 6/marzo/2002


Tribunal de Circuito de Apelaciones:
                        Circuito Regional VI


Juez Ponente:
                        Hon. Germán J. Brau Ramírez


Abogada de la Parte Peticionaria:
                        Lcda. Rina J. Cruz Pérez


Abogado de la Parte Recurida:
                        Lcdo. Arístides Ramón



Materia: Entredicho Preliminar y Permanente

    Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correcciones del proceso
    de compilación y publicación oficial de las decisiones del
    Tribunal. Su distribución electrónica se hace como un servicio
    público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Don Benigno Rodríguez Pérez
y otra

     Peticionarios

          v.

Don Roberto Gómez y otros

     Recurridos

CC-1999-464

**Opinión del Tribunal emitida por la Juez Asociada señora NAVEIRA DE RODÓN**

San Juan, Puerto Rico, a 6 de marzo de 2002

I

Los peticionarios, Don Benigno Rodríguez Pérez y su esposa, Doña Carmen Lydia Martínez Vázquez[1] (en adelante esposos Rodríguez-Martínez) son dueños y residentes del lote D-7 de la Comunidad Ranchos de Guayama (en adelante Comunidad), localizada en el barrio Quebrada Yeguas en el pueblo de Salinas. Los recurridos Roberto Gómez y su esposa, son dueños del lote C-7 de la Comunidad, el cual queda adyacente al lote de los esposos Rodríguez-

---

[1] Con posterioridad a la presentación de la demanda se unieron a la misma un nutrido grupo de residentes de la comunidad que también son peticionarios en el presente recurso.

**Martínez. La Comunidad en cuestión fue producto del desarrollo de una finca de mil ciento ochenta y cinco (1,185) cuerdas llevado a cabo en 1970, y está dividida en dos áreas, una residencial y la otra comercial.**

En 1996, el Sr. Gómez le arrendó el lote C-7 de la Comunidad a la codemandanda y también recurrida, REMAR, Inc. (en adelante REMAR), corporación sin fines de lucro organizada bajo las leyes del estado de Illinois y con oficinas principales en el estado de Florida. REMAR tenía el propósito de establecer en el referido lote un Centro de rehabilitación para personas con problemas de drogas y alcoholismo (en adelante Centro).[2] Con ese fin, REMAR comenzó a realizar en el lote C-7 actos de posesión y dominio conducentes a la instalación, construcción y habilitación del Centro. También solicitó el correspondiente permiso de uso del local a la Administración de Reglamentos y Permisos (en adelante ARPe).

Los esposos Rodríguez-Martínez presentaron una demanda de entredicho provisional e injunction preliminar y permanente ante el tribunal de instancia el 1 de julio de 1996.[3] Alegaron que la Comunidad era un proyecto residencial, y que el establecimiento del Centro en la propiedad adyacente a la suya constituía una alteración a la condición restrictiva establecida para dichos predios de terreno mediante una servidumbre en equidad, que específicamente prohibía el uso del lote en controversia para usos comerciales. Señalaron también que la construcción de dicho centro en un área residencial les provocaría daños irreparables, ya que éste afectaba la tranquilidad y la seguridad de los residentes al saber que personas extrañas tendrían acceso a la Comunidad.

Los demandados contestaron la demanda negando las alegaciones de los peticionarios. Alegaron además que REMAR era una institución sin fines de lucro y que la servidumbre en cuestión no prohibía el establecimiento de instituciones como el Centro, ya que éste no era un "comercio."

---

[2] En el área comercial de la Comunidad existe un centro de rehabilitación llamado "Pabellón de la Fe", dedicado a ofrecer tratamiento y hospedaje a personas alcohólicas y/o adictas a drogas.

[3] Los peticionarios también se opusieron a la solicitud que hicieran los recurridos ante ARPe.

Mientras transcurrían los procedimientos ante el tribunal de instancia, ARPe emitió una resolución de 12 de septiembre de 1997, en la cual recomendó favorablemente la concesión a REMAR de un permiso de uso por vía de excepción autorizando la operación del referido Centro. En cuanto a la condición restrictiva, la agencia señaló que la corrección y aplicabilidad de ésta "deb[ía] ser materia de interpretación judicial."

El tribunal de instancia dictó sentencia, notificada el 12 de febrero de 1998, en la cual denegó el recurso de injunction. Entendió el tribunal, fundamentándose principalmente en las disposiciones del Código de Comercio, 10 L.P.R.A. § 1001 *et seq.*, que al ser REMAR una institución sin fines de lucro, y el Centro ser un establecimiento cuyo propósito primordial era la rehabilitación, no podía considerarse al demandado un comerciante, ni al Centro un establecimiento dedicado al uso comercial. En consecuencia, concluyó que la condición restrictiva establecida en la servidumbre en equidad no era de aplicación al demandado, ni le impedía a éste establecer y operar el Centro, ya que el uso propuesto no era incompatible con la restricción de **no utilizarse la parcela para usos comerciales**.

Inconformes con esta determinación, los demandantes recurrieron ante el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito). El 19 de mayo de 1999, dicho tribunal dictó sentencia confirmatoria de la emitida por el tribunal de instancia.[4] El foro apelativo determinó que por ser el término "comercio" uno ambiguo, la prohibición de uso comercial en cuestión debía interpretarse restrictivamente en contra de la restricción al derecho de propiedad.

De esta sentencia los demandantes recurrieron ante nos mediante recurso de certiorari, alegando los siguientes errores:

> Erró el Honorable Tribunal de Circuito de Apelaciones al confirmar la sentencia dictada por el Tribunal de Primera Instancia que determinó que las condiciones restrictivas de uso inscritas en los terrenos objeto de este litigio no eran aplicables a los codemandados REMAR, INC., permitiendo la

---

[4] La Juez Pesante Martínez disintió de esta sentencia "por entender que el Centro de Rehabilitación en controversia constituye un uso comercial del predio C-7 y ello está prohibido por las condiciones restrictivas contenidas tanto en la escritura matriz como en las escrituras individuales."

instalación de un hospedaje especializado en el área residencial de Ranchos de Guayama.

Erró el Honorable Tribunal de Circuito de Apelaciones al confirmar la sentencia dictada por el Tribunal de Primera Instancia que determinó que las actividades que realiza la corporación REMAR, INC., no son de carácter comercial, por lo que concluyó que no eran incompatibles con las restricciones de uso que gravan los terrenos objeto del litigio.

Acordamos revisar y expedimos el recurso solicitado. Ambas partes han presentado sus alegatos y con el beneficio de sus argumentos resolvemos.

II

Por estar íntimamente relacionados, discutiremos en conjunto ambos señalamientos de error.

Es principio básico de nuestro ordenamiento que la propiedad se presume libre de cargas y gravámenes. Soto Vázquez v. Vázquez Torres, 138 D.P.R. 282 (1985) González v. Hawayek, 71 D.P.R. 528, 533 (1950). No obstante, nuestro ordenamiento permite que se pacten límites y condiciones al derecho de dominio.

Las servidumbres en equidad contienen unas condiciones restrictivas constituidas unilateralmente por el urbanizador, que limitan las facultades de los futuros adquirentes con respecto al uso y las edificaciones permisibles. Sands v. Ext. Sagrado Corazón, Inc., 103 D.P.R. 826, 827 (1975); Asoc. V. Villa Caparra v. Iglesia Católica, 117 D.P.R. 346, 351 (1986). Para la validez y eficacia de estas restricciones, es necesario que las mismas sean razonables, se establezcan como parte de un plan general de mejoras, consten de forma específica en el título y se inscriban en el Registro de la Propiedad. Lawton v. Rodríguez Rivera, 35 D.P.R. 487, 494 (1926); Carrillo Norat v. Camejo, 107 D.P.R. 132, 137 (1978); Asoc. V. Villa Caparra v. Iglesia Católica, supra, pág. 352. Una vez son inscritas en el Registro, las restricciones constituyen derechos reales oponibles erga omnes. Entre los predios afectados se crea entonces "una relación de servidumbres recíprocas, pues

cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización." Carrillo Norat v. Camejo, supra, pág. 136.

Todo adquirente de una propiedad sujeta a una servidumbre en equidad debidamente inscrita y válida, tiene el deber de cumplir con las limitaciones y condiciones que establezca dicha servidumbre. A estos fines, hemos reconocido que los dueños de predios favorecidos por una servidumbre en equidad tienen disponible el recurso de injunction para hacer efectivos sus derechos e impedir violaciones a las limitaciones impuestas. Asoc. V. Villa Caparra v. Iglesia Católica, supra, pág. 354; Glines v. Matta, 19 D.P.R. 409, 416 (1913). El demandado a su vez puede levantar cualquier defensa en equidad, tal y como consentimiento, incuria, manos sucias o cualquier otro impedimento de naturaleza análoga. Asoc. V. Villa Caparra v. Iglesia Católica, supra, pág. 354; Colón v. San Patricio Corporation, 81 D.P.R. 242, 254 (1959).

III

En el caso de autos no está en controversia el hecho de que existe una servidumbre en equidad válidamente establecida, la cual dispone una restricción a la que está sujeta el predio en controversia. La restricción, según está descrita en la Escritura Matriz de la Comunidad y las Escrituras de Compraventa individuales, establece lo siguiente:

> No se podrán poner anuncios comerciales de clase alguna en la Parcela, ni usarse dicha parcela para usos comerciales, ni se podrán depositar escombros, materiales o desperdicios, y las basuras deberán depositarse en recipientes adecuados, quedando bien entendido que, de requerirse el establecimiento de algún comercio para servicio de los vecinos del Proyecto Ranchos de Guayama, éste se establecerá en el área o áreas reservadas por la vendedora para tal fin dentro de la demarcación donde se instalen las facilidades recreativas, o colindantes o cerca de las mismas.

Está claro que no puede utilizarse el predio en controversia para "usos comerciales". Lo que REMAR sostiene es que su fin como corporación no es el lucro, y que las funciones que pretende establecer en el lote C-7, es decir, un centro de rehabilitación para personas con problemas

de drogas y alcoholismo, no configuran un uso comercial prohibido por la servidumbre, máxime cuando ésta no establece que la parcela podrá usarse únicamente para fines residenciales.  Señalan que el Centro no recibirá ingresos económicos por parte de las personas que reciban allí servicios, sino que el mismo se sostendría con donaciones, y que su estructura financiera se desarrollaría bajo un programa agrícola de frutos menores, crianza de aves, y la realización de mudanzas y otros servicios realizados por los personas en tratamiento,[5] todo con el propósito brindar servicios gratuitos a éstos, por lo que sus labores no constituyen "comercio".

El Tribunal de Circuito concluyó que por ser el término "comercio" uno ambiguo, el cual podría incluir o no un centro de rehabilitación como el de autos, la cláusula que establece la prohibición de uso comercial en controversia debía interpretarse restrictivamente.  Al así resolver, el foro apelativo no atendió la controversia precisa que tenía ante sí, esto es, si a la luz de las circunstancias de este caso y el derecho aplicable, las funciones del Centro pueden ser consideradas actividades comerciales prohibidas por la servidumbre que grava el lote C-7.

Nos enfrentamos aquí a una restricción establecida contractualmente, a la cual todos los propietarios en la Comunidad acordaron someterse al adquirir los lotes de terreno.  Así pues, la situación de autos debe regirse por las normas que establece el Código Civil de Puerto Rico en relación con la interpretación de los contratos, con especial atención a la voluntad e intención de las partes.  31 L.P.R.A § 3471 a 3479.  Como cuestión de hecho, hemos utilizado este análisis anteriormente.  En <u>Cond. Prof. S.J. H. Centre</u> v. <u>P.R.F., Inc.</u>, 133 D.P.R. 488 (1993), a la página 504, establecimos expresamente, en el contexto del régimen de propiedad horizontal, que "de surgir dudas en cuanto a la especificidad de los usos

---

[5]    Esta información surge de lo declarado por el Sr. Salvador Pérez Martí, representante de REMAR, en la vista de injunction, según dicho testimonio está recogido en la sentencia dictada por el Tribunal de Circuito.  Además obra en autos copia de una hoja promocional en la cual REMAR anuncia sus servicios de recogido de muebles, ropa y otra variedad de mercancías, ofreciendo una mudanza "barata y eficiente".  No obstante, en dicha promoción se hace constar que "REMAR USA  es un 'not profit organization'".

consignados en la Escritura Matriz, debemos atender a la voluntad de las partes al consignar éstos en la escritura y al adquirir los apartamentos en cuestión." Igual norma debe regir el caso de marras.

Por su parte, el tribunal de instancia llegó a la conclusión de que a tenor con la definición del comerciante establecida en el Código de Comercio[6], _supra_, REMAR no era un comerciante, y por tanto, no utilizaría la parcela para usos comerciales.

Consideramos que no debemos acudir a unas disposiciones aisladas del Código de Comercio para resolver el caso ante nos, ya que en realidad dichas disposiciones no están contempladas para situaciones como la de autos. Resulta más adecuado utilizar como referencia los reglamentos de zonificación aprobados por la Junta de Planificación de Puerto Rico (en adelante Junta), ya que éstos están directamente relacionados con la materia que nos ocupa.[7] Aún cuando surge de la resolución emitida por ARPe donde se concedió el permiso de uso por excepción, que el lote en controversia se encuentra en un distrito no zonificado de acuerdo al Mapa de Zonificación vigente para el área de Salinas, las definiciones y clasificaciones contenidas en dichos reglamentos de zonificación, por los cuales la Junta se rige al determinar el uso residencial o comercial que se le da a las distintas zonas rurales y urbanas del país, sirven de guía para interpretar la condición restrictiva en controversia.[8]

El uso que se propone dar REMAR al local en controversia es lo que se conoce bajo el Reglamento de Zonificación de Puerto Rico, Reglamento

---

Todas las ganancias de las cosas que ustedes nos dan van destinadas a mantener un programa gratuito de rehabilitación para drogadictos, alcohólicos, etc."

[6] El Código de Comercio define el término comerciante como "(1) los que teniendo capacidad legal para ejercer el comercio, se dedican a él habitualmente, en nombre propio; (2) las compañías, corporaciones y asociaciones mercantiles o industriales que se constituyen con arreglo a este Código o a leyes especiales, y las corporaciones

[7] Aún si utilizamos las disposiciones del Código de Comercio para atender la controversia ante nos, debemos tomar en consideración que éste claramente establece que los actos de comercio pueden realizarse tanto por comerciantes como por aquellos que no lo son. 10 L.P.R.A. § 1002. Por tanto, REMAR pudiera estar realizando actos de comercio aun sin ser propiamente un "comerciante" según se define en el Código de Comercio.

de Planificación Núm. 4 de 5 de noviembre de 2000 como un "hospedaje especializado." La sección 2.01 de dicho reglamente define este tipo de hospedaje como "facilidad donde se provee alojamiento a personas en estadías de varios meses y cuyo propósito es recibir algún tratamiento médico, [p]sicológico, de descanso, retiro o rehabilitación de hábitos".

Por otra parte, la sección 2.01 del Reglamento de Lotificación y Urbanización, Reglamento de Planificación Núm. 3 de 29 de noviembre de 1992, define "uso comercial" como el uso relacionado a la venta de mercancía o a la venta o prestación de servicios. Este Tribunal interpretó, en el contexto de una condición restrictiva que sujetaba el uso de un inmueble sometido al régimen de propiedad horizontal únicamente para "oficinas y locales comerciales", que el concepto "uso comercial" es mucho más abarcador que el de "uso residencial". Señalamos que "cuando hablamos de uso comercial podemos pensar en multiplicidad de actividades que se pueden ubicar bajo dicho calificativo. El término es tan abarcador que en la mayoría de los casos equivale a una negación del uso residencial, sin límites en cuanto a los posibles usos relacionados con el 'comercio'." Soto Vázquez v. Vázquez Torres, supra, 292-293 (1995).

Con este marco jurídico y fáctico, pasemos a analizar el caso de autos.


IV

De todo lo expuesto se puede concluir, en primer lugar, que el mero hecho de que **REMAR** sea una entidad sin fines de lucro no necesariamente significa que las actividades que pretende establecer en el Centro sean de naturaleza no comercial. Como se puede apreciar, el Reglamento de Zonificación define "uso comercial" no solamente en términos de venta, sino también de prestación de servicios. El Centro se propone prestar precisamente un servicio de tratamiento médico, de retiro o rehabilitación, tal como se desprende de la definición de "hospedaje

---

[8] Como cuestión de hecho, la autoridad de ARPe para conceder permisos de uso por vía de excepción esta reglamentada por el sección 99.00 del

especializado" provista por el Reglamento de Zonificación. Así pues, el tipo de servicio que brinda el Centro puede considerarse un "uso comercial", según dicho término está definido en los reglamento de zonificación, y de acuerdo con la amplitud del concepto "uso comercial", según ha sido interpretado por este Tribunal.

Además, aunque está establecido que no se le cobrará suma de dinero alguna a las personas que reciban tratamiento en el Centro, del expediente surge que REMAR sí estará llevando a cabo actividades de naturaleza comercial para el funcionamiento del Centro, tales como el establecimiento de un programa agrícola de frutos menores y crianza de aves, además de la realización de mudanzas y otros trabajos de plomería y hojalatería, entre otros. Inclusive, REMAR ha hecho propaganda a estos efectos anunciando sus servicios.

Debe resultar evidente que este tipo de actividades son las que precisamente los residentes de la Comunidad pretendían evitar al establecer la condición restrictiva en controversia. No podemos pasar por alto que desde el comienzo del desarrollo de la Comunidad, ésta se dividió en un área residencial y un área comercial. Resulta claro que el propósito de esta división era que el área residencial se utilizara para dicho propósitos solamente. Esta intención se desprende fácilmente de la cláusula misma en que consta la prohibición de uso comercial del lote en controversia, la cual señala que de necesitarse el establecimiento de algún comercio, se hará "<u>en el área que la vendedora reservó para ese fin</u>."

Así pues, debe regir en este caso la clara intención de los residentes al pactar someterse a la condición restrictiva de prohibición de uso comercial, designando específicamente un área separada y distinta para ese fin. Por tanto, concluimos que efectivamente REMAR está impedido de utilizar el lote C-7 de la Comunidad para establecer el Centro de rehabilitación que propone, ya que la operación del mismo está en contra

---

Reglamento de Zonificación de Puerto Rico.

de la servidumbre en equidad que precisamente prohíbe la utilización del lote C-7 para usos comerciales.[9]

Por todos los fundamentos expuestos, se revoca la sentencia dictada por el Tribunal de Circuito de Apelaciones.


Miriam Naveira de Rodón
Juez Asociada

---

[9] Deseamos señalar que reconocemos el loable propósito de las instituciones como el Centro, y la gran importancia de la función social que éstas cumplen en nuestro país. No obstante, por encomiables que sean dichos propósitos y labores, los mismos no pueden derrotar una restricción al uso de la propiedad debidamente establecida mediante una servidumbre en equidad, sobre todo en vista de que en la urbanización en cuestión existía ya un área para uso comercial (no residencial) expresamente designada así, donde el Centro pudo haberse establecido.

CC-1999-464

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Don Benigno Rodríguez Pérez
y otra

    Peticionarios

        v.

Don Roberto Gómez y otros

    Recurridos

CC-1999-464

SENTENCIA

San Juan, Puerto Rico, a 6 de marzo de 2002

    Por los fundamentos expuestos en la Opinión que antecede, se revoca la sentencia dictada por el Tribunal Circuito de Apelaciones.

    Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina.  El Juez Asociado señor Rivera Pérez concurre con el resultado sin opinión escrita.  El Juez Asociado señor Corrada del Río disiente con opinión escrita.

Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina

CC-1999-464

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Don Benigno Rodríguez Pérez
y otros

    Peticionarios

      v.                    CC-1999-464      Certiorari

Don Roberto Gómez y otros

    Recurridos


Opinión Disidente emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO


San Juan, Puerto Rico a 6 de marzo de 2002.


La Mayoría de este Tribunal resuelve que el establecimiento de un centro de rehabilitación para personas con problemas de drogas y alcoholismo por una corporación sin fines de lucro constituye un uso comercial prohibido por una servidumbre en equidad en el predio en controversia. Disentimos de tal dictamen por entender que actuó correctamente el Tribunal de Circuito de Apelaciones (TCA) al resolver que la operación del centro de rehabilitación en cuestión no constituye un uso comercial prohibido por la servidumbre en equidad.

Don Roberto Gómez y su esposa, de nombre desconocido, (en adelante "los recurridos"), son dueños del lote C-7 de la Comunidad Ranchos Guayama (en adelante "la Comunidad"), localizada en el barrio Quebrada Yeguas, en Salinas, Puerto Rico. Don Benigno Rodríguez Pérez y su esposa, Doña Carmen Lydia Martínez Vázquez (en adelante "los peticionarios"), son propietarios del lote D-7 de la Comunidad, el cual queda adyacente al lote de los recurridos.

La Comunidad fue producto del desarrollo de una finca de 1,185 cuerdas realizado en 1970 por la corporación Land Owners Development. El proyecto se dividió en dos áreas, a saber: una residencial y otra comercial. Tanto el lote de los recurridos como el de los peticionarios están ubicados en el área residencial, la cual se encuentra restringida por la siguiente servidumbre en equidad:

> Cuatro: No se podrán poner anuncios comerciales de clase alguna en la Parcela, **ni usarse dicha Parcela para usos comerciales**, ni se podrán depositar escombros, materiales o desperdicios, y las [sic] basuras [sic] deberán depositarse en recipientes adecuados, quedando bien entendido que, de requerirse el establecimiento de algún comercio para servicio de los vecinos del Proyecto Ranchos Guayama, éste se establecerá en el área o áreas reservadas por Citibank para tal fin.[10] (Énfasis suplido.)

Los recurridos le arrendaron el lote C-7 a REMAR, Inc. (en adelante REMAR), una corporación sin fines de lucro organizada bajo las leyes del estado de Illinois, cuyas oficinas principales están localizadas en el estado de Florida. Ello, con el propósito de establecer un centro de rehabilitación para problemas de drogadicción y alcoholismo (en adelante "el Centro").[11] Así, pues, REMAR realizó actos de posesión y dominio dirigidos a la instalación, construcción y habilitación del Centro. Incluso, solicitó ante la Administración

---

[10] Véase, Escritura de Compraventa y Constitución de Condiciones Restrictivas, Apéndice, pág. 52.

[11] Cabe indicar que, en el área comercial de la Comunidad, existe un centro dedicado a esos mismos fines llamado "Pabellón de la Fe".

de Reglamentos y Permisos (A.R.Pe.) el permiso de uso correspondiente.

Ante tales circunstancias, los aquí peticionarios presentaron ante el Tribunal de Primera Instancia (TPI) una demanda de entredicho provisional e injuction preliminar y permanente contra los aquí recurridos, REMAR, Sr. Wilfredo Caballero, Sr. Raúl Morales y Dra. Abigail Caraballo.[12] Alegaron que el lote C-7 está sito en el área residencial y que establecer el Centro en la propiedad en cuestión constituye una violación a la condición restrictiva impuesta mediante una servidumbre en equidad, que prohíbe el uso del lote para fines comerciales. Arguyeron que la construcción del Centro les ocasionaría daños irreparables, en vista de que la tranquilidad y seguridad de los residentes se vería afectada por el acceso de personas extrañas a la Comunidad.

En la contestación a la demanda, los codemandados argumentaron que REMAR es una institución sin fines de lucro y que la servidumbre en cuestión no impide el establecimiento del Centro porque éste no es un comercio.

Pendientes los procedimientos ante el TPI, A.R.Pe. emitió una resolución, el 12 de septiembre de 1997, recomendando favorablemente el permiso de uso a favor de REMAR y autorizando la operación del Centro. No atendió la corrección y aplicabilidad de la condición restrictiva por entender que ello era materia de interpretación judicial.

El 9 de febrero de 1998, el TPI dictó una sentencia desestimando la demanda. Dictaminó que REMAR es una institución privada, sin fines de lucro, que no se dedica al comercio y que, por tanto, la condición restrictiva no le impide operar el Centro. Sostuvo, además, que esa restricción no requería que las parcelas del área residencial se

_____

[12] El Sr. Caballero fue demandado en calidad de Presidente y/o Director y/o Encargado de REMAR; mientras que al Sr. Morales y a la

dedicasen al uso residencial, con exclusión clara y precisa de cualquier otro uso.

Inconformes, los demandantes, aquí peticionarios, acudieron ante el TCA mediante un recurso de apelación. El 19 de mayo de 1999, el foro apelativo intermedio emitió una sentencia confirmando la dictada por el TPI. Concluyó que por el término "comercio" ser uno ambiguo, la servidumbre en equidad en cuestión debía de interpretarse restrictivamente en contra de la prohibición.

Todavía inconformes, los peticionarios recurren ante nos y señalan los siguientes errores:

> [e]rró el Honorable Tribunal de Circuito de Apelaciones al confirmar la Sentencia dictada por el Tribunal de Primera Instancia que determinó que las condiciones restrictivas de uso incritas [sic] en los terrenos objetos [sic] de este litigio no eran aplicables a los codemandados REMAR, Inc., permitiendo la instalación de un hospedaje especializado en el área residencial de Ranchos Guayama.

> Erró el Honorable Tribunal de Circuito de Apelaciones al confirmar la Sentencia dictada por el Tribunal de Primera Instancia que determinó que las actividades que realiza la corporación REMAR [,] Inc., no son de carácter comercial, por lo que concluyó no eran incompatibles con las restricciones de uso que gravan los terrenos objeto del litigio.

II

Las servidumbres en equidad constituyen una restricción unilateral al uso de una propiedad. Para su validez, éstas han de ser razonables; han de establecerse como parte de un plan general de mejoras; **han de constar de forma específica en el título**; y deben estar inscritas en el Registro de la Propiedad. *Asoc. V. Villa Caparra v. Iglesia Católica,* 117 D.P.R. 346, 352 (1986).

En nuestro ordenamiento jurídico, la propiedad se presume libre de cargas y gravámenes. *Soto Vázquez v. Vázquez Torres,* 138 D.P.R. 282, 291 (1995). Es por ello que, **cualquier condición restrictiva**

---

Dra. Caraballo se les demandó como oficiales y/o encargados y/o personas responsables del proyecto REMAR.

**al uso de la propiedad debe interpretarse de manera estricta y limitada**. *Íd.*

En el caso de epígrafe, una Mayoría de este Tribunal interpreta que, al dividir la Comunidad en dos áreas, residencial y comercial, existía un claro propósito de que el área residencial se utilizara únicamente para ese fin. Discrepamos de tal interpretación. Para limitar el uso de ésta a uno residencial, era necesario establecerlo expresamente. No obstante, la restricción fue a los únicos fines de prohibir los usos comerciales, sin ello implicar que sólo se destinaría al uso residencial.

Veamos, pues, la definición de comerciante, según el Código de Comercio:

> [s]on comerciantes, para los efectos de este Código:
>
> (1) Los que, teniendo capacidad legal para ejercer el comercio, se dedican a él habitualmente, en nombre propio.
>
> (2) Las compañías, corporaciones y asociaciones mercantiles o industriales, que se constituyeren con arreglo a este Código o a leyes especiales, y las corporaciones y compañías que se hayan organizado en el extranjero, también para fines mercantiles e industriales, y que estén debidamente autorizadas para hacer negocios en Puerto Rico. 10 L.P.R.A. sec. 1001.

En materia de Derechos Reales, en específico Propiedad Horizontal, hemos expresado que el concepto "uso comercial" es más abarcador que el "uso residencial". *Soto Vázquez v. Vázquez Torres,* supra, pág. 292. Sobre este particular, añadimos que, ordinariamente, el uso comercial "equivale a una negación de un uso residencial, sin límites en cuanto a posibles usos relacionados con el 'comercio'." *Íd.*, pág. 293. Claro está, allí aclaramos que, cuando se intente incorporar una restricción adicional que modifique la amplitud de un uso comercial, ésta habrá de informarse a los nuevos adquirentes con suma claridad. *Íd.*

Si acudimos al Reglamento de Lotificación y Urbanización (Reglamento de Planificación Núm. 3), vigente desde el 29 de

noviembre de 1992, a la pág. 33, "uso comercial" se define como "[u]so relacionado a la venta de mercancía o a la venta o prestación de servicios."

Por otra parte, el significado del término comercial contenido en la enciclopedia *Corpus Juris Secundum* es el siguiente:

> [t]he word "commercial" is defined as meaning mercantile; occupied with commerce; relating to or dealing with commerce; of the nature of commerce; of or pertaining to commerce; pertaining or relating to commerce or trade; derived by commerce or trade; engaged in trade; having financial profit as the primary aim.
>
> The term "commercial," in its broad sense comprehends all business, and industrial enterprises, and in a comprehensive sense it includes occupations and recognized forms of business enterprise which do not necessarily involve trading in merchandise as well as buying, selling, and exchange in the general sales or traffic of [American] markets, although, when limited to the purchase and sale or exchange of goods and commodities, it is said to be used in a narrow and restricted sense. Thus it has been said that in its narrow sense it includes only those enterprises which are engaged in the buying and selling of goods. It has also been said that there is nothing erroneous or irrational in interpreting the word "commercial" as including farming activities.
>
> Used in a broad sense, it includes "industrial," and is sometimes synonymous with "business," see the C.J.S. definition of that word. (Escolios omitidos.) 15A C.J.S.

El *Black's Law Dictionary* define "comercio" como "[t]he exchange of goods, productions, or property of any kind; the buying, selling, and exchanging of articles. *Anderson v. Humble Oil and Refining Co.,* 226 Ga. 252, 174 S.E.2d 415, 417."[13] Conforme al *Diccionario Enciclopédico Espasa,* comercio se define como "[n]egociación que se hace comprando, vendiendo o permutando géneros o mercancías."[14] La colección *Words and Phrases* lo define como "the business of buying and selling commodities for money. *U.S. v. Besser Mfg. Co.,*

---

[13] *Black's Law Dictionary* (5ta. Ed. rev. 1979), pág. 244.

[14] *Diccionario Enciclopédico Espasa,* 8va ed., Espasa-Calpe, S. A., Madrid, 1978, t. 4, pág. 255.

D.C.Mich., 96 F.Supp. 304, 307."[15] De una simple lectura de estas definiciones se desprende que, en el ámbito del "comercio", la entrega de un bien o servicio no es gratuita. Implica una negociación de la cual se deriva algún fin lucrativo.

Sobre este particular, el profesor Ambrosio González del Valle nos comenta:

> [l]a propia etimología de la palabra comercio (del latín: *cum merx*) alude a operaciones con mercancías, esto es, a objetos destinados al cambio; y así lo encontramos definido en todos los tratados clásicos. ULPIANO, por ejemplo, decía: «*commercium est emendi vendedique invicem ius»,* o sea, el comercio es el derecho de comprar y vender. En el mismo sentido lo definían también STRACCA Y SCACCIA en el siglo XV. VERRI hacía mayor énfasis en la traslación de bienes que en el cambio, y la escuela mercantilista del siglo XVIII y XIX se fijó más bien en la finalidad económica del acto, reputando comerciales aquellos que efectuaban la circulación de los bienes entre productores y consumidores, y comerciante al intermediario entre unos y otros.[16]

Con respecto a los límites tradicionales y estrictamente económicos del concepto "comercio", González del Valle expresa que: "[e]s, en fin, una actividad esencialmente *lucrativa.* En el comercio, ya lo hemos dicho, no se conciben los actos de mera liberalidad o filantropía. Lo que lo impulsa y desarrolla es precisamente ese ánimo de lucro."[17] (Bastardillas en el original.) Allí mismo aclaró que, a pesar de que como norma general el comercio tiene un ánimo lucrativo, existen contratos mercantiles como el depósito, mandato, préstamo y afianzamiento los cuales podrían ser gratuitos. *Íd,* pág. 359.

A base de la definición de comerciante establecida en el Código de Comercio, *supra,* el Centro no se dedica a uso comercial. Tampoco cae dentro de la definición de "commercial" ni las definiciones de "comercio" antes citadas.

---

[15] *Words and Phrases,* West Publishing Co., Minnesota, 1952, vol. 7A, pág. 454.

[16] A. González del Valle, *Estudio económico-jurídico del acto de comercio,* 28 Rev. Der. Prtño. 355-356 (1968).

La Mayoría de este Tribunal opta por aplicar la definición de "uso comercial" contenida en el Reglamento de Lotificación y Urbanización y luego concluye que el servicio de tratamiento o rehabilitación que el Centro se propone ofrecer puede considerarse un "uso comercial". Se colige de dicha definición que la venta o prestación de servicios a la cual ésta hace referencia presupone una ganancia a cambio de ese servicio. Sin embargo, en el presente caso, el Centro no recibe aportación económica alguna ni de los jóvenes que reciben tratamiento ni del gobierno local o federal. Conforme al testimonio del Sr. Salvador Pérez Martí, representante de REMAR, el tratamiento de rehabilitación consiste en charlas, consejería espiritual y paseos por los predios del terreno, durante un horario diurno, sin incurrir en gastos de drogas y medicamentos. A tenor de lo anterior, entendemos que REMAR estableció el Centro con un propósito exclusivamente rehabilitador, sin ánimo de dedicarlo a una actividad comercial.

Coincidimos con el TCA en cuanto a que la solución de la controversia en cuestión no debe quedar sujeta a la libre selección de un parámetro interpretativo. Por el contrario, debemos aplicar la norma de hermenéutica que establece que, ante la incertidumbre, la condición restrictiva ha de interpretarse de forma estricta y limitada. *Soto Vázquez v. Vázquez Torres*, supra.

En el presente caso, los peticionarios aducen que el lenguaje de la condición restrictiva en cuestión, la cual prohíbe que el lote C-7 se utilice para fines comerciales, también implica que éste podrá utilizarse únicamente para uso residencial. No estamos de acuerdo con tal interpretación. El lenguaje de la condición restrictiva que nos ocupa no justifica tal interpretación. Meramente prohíbe los usos comerciales en el área designada como residencial. No excluye expresamente que se destine a otro uso que no sea residencial. Es doctrina establecida que cualquier restricción al uso de una

---

[17] *Íd.,* págs. 356-357.

propiedad ha de especificarse con claridad. *Soto Vázquez v. Vázquez Torres,* supra. Por tanto, la condición restrictiva que invocan los peticionarios debe aplicarse restringidamente en contra de la prohibición.

La Mayoría de este Tribunal incide al resolver que REMAR está impedida de utilizar el lote C-7 de la Comunidad para el establecimiento de un centro de rehabilitación para personas con problemas de drogas y alcoholismo, un fin social muy encomiable, que no denota ánimo de lucro.

A tenor de los fundamentos esbozados, concluimos que el fin rehabilitador al cual se destina el Centro no conflige con la condición restrictiva en cuestión.

Por las razones que anteceden, disentimos. En su lugar, confirmaríamos el dictamen del Tribunal de Circuito de Apelaciones, el cual resuelve que la servidumbre en equidad en cuestión debe interpretarse restrictivamente en contra de la prohibición.

BALTASAR CORRADA DEL RÍO<br>
Juez Asociado