# 2007 DTA 97

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE CAGUAS
PANEL XI**

ASOCIACIÓN DE RESIDENTES GRAN VISTA, INC.
Demandante-Peticionaria

v.

RUBÉN MENDEZ CARABALLO; MARITZA PEÑA Y LA SOCIEDAD LEGAL
DE GANANCIALES POR ELLOS CONSTITUIDA
Demandados-Recurridos

Núm. KLCE-07-00805

San Juan, Puerto Rico, a 8 de agosto de 2007

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Escribano Medina y la Juez Hernández Torres

Pesante Martínez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, la Asociación de Residentes Gran Vista, Inc. (la peticionaria), y mediante escrito de *certiorari* nos solicita que revisemos una Sentencia Sumaria Parcial Interlocutoria de 30 de marzo de 2007, notificada el 2 de mayo de 2007, que fue dictada por el Hon. Sigfrido Steidel Figueroa, Juez del Tribunal de Primera Instancia (TPI), Sala Superior de Caguas.

En síntesis, el TPI determinó que la escritura que detalla las condiciones restrictivas que pesan sobre los solares e inmuebles sitos en la Urbanización Gran Vista I de Gurabo (Escritura Núm. 2 sobre Constitución de Restricciones de Uso y Edificación en Urbanización Gran Vista, otorgada el 13 de noviembre de 1986 ante el notario público José Ramón Quiñones Coll), no establece la obligación por parte de los titulares de los solares en cuestión a pagar cuotas para sufragar la implantación y mantenimiento de un sistema de control de acceso. Según el TPI, la escritura condicionó la implantación de un sistema de control de acceso y pago de una cuota para su mantenimiento a que se lograra mediante un acuerdo entre la peticionaria con lo titulares de solares. El TPI entendió que la referida escritura establece la obligación de los titulares de solares de la urbanización Gran Vista I a pagar cuotas de mantenimiento de áreas comunes, pero sin que se entienda incluida en ese concepto las facilidades del sistema de control de acceso. Finalmente, el TPI determinó que en virtud de la escritura de condiciones restrictivas sólo puede determinarse que Rubén Méndez Caraballo, Margarita Peña y la sociedad legal de bienes gananciales compuesta por ambos (los recurridos), adeudan cuotas por concepto de mantenimiento de áreas comunes y que dicho monto no se ha precisado.

En su dictamen, el TPI estableció los hechos que a su juicio no estaban en controversia, y que además, sostenían su determinación de que no existía razón para esperar hasta la resolución final del pleito para adjudicar el alcance del contenido de la escritura de condiciones restrictivas de la Urbanización Gran Vista I, y ello, en relación a las obligaciones de pago de cuotas de mantenimiento. No obstante, trajo a colación que las partes adujeron hechos y aportaron prueba documental que sugiere que la urbanización en cuestión cuenta con los permisos necesarios para operar el sistema de control de acceso desde el año 2000. Lo anterior, por haberse aprobado la operación del sistema de control de acceso mediante Ordenanza Municipal Número 12, Serie 200-01, cuyo encabezamiento lee: *"PARA RATIFICAR, FORMALIZAR Y/O CONVALIDAR LA CONCESIÓN DE PERMISO A LA ASOCIACIÓN DE RESIDENTES DE LA URBANIZACIÓN GRAN VISTA I PARA OPERAR MECANISMOS DE CONTROL DE ACCESO EN DICHA URBANIZACIÓN Y PARA OTROS FINES"*.

Tomando en cuenta los cuestionamientos que se plantearon respecto al proceso de aprobación de dicha ordenanza, al amparo de los preceptos de la Ley de Control de Acceso, Ley Núm. 21 de 20 de mayo de 1987, según enmendada, el TPI estimó que había hechos en controversia sobre este particular. Por ello, dispuso que se abstendría de entrar a discutir la exigibilidad de cuotas de mantenimiento (particularmente, en relación al sistema

de control de acceso de la urbanización) al amparo de la legislación pertinente. También, indicó que quedaba pendiente de dilucidarse la defensa de incuria que levantó la peticionaria respecto a los planteamientos de los recurridos sobre el proceso de aprobación de la Ordenanza Municipal. Todo ello, según se determinó, sería ventilado en una vista probatoria ulterior.

De este dictamen, acudió ante nos la peticionaria y señaló que erró el TPI al determinar que erró el TPI al determinar que: (1) la escritura de condiciones restrictivas de la urbanización Gran Vista I no establece la obligación de los titulares de los solares a pagar cuotas de mantenimiento para sufragar la administración, aplicación y mantenimiento de un control de acceso; (2) el sistema de control de acceso no está comprendido dentro de la cuota de mantenimiento que en virtud de la referida escritura todo titular viene obligado a pagar; (3) la referencia que hace la cláusula 7 de la escritura de condiciones restrictivas al *"servicio de guardia"* y a *"un sistema de vigilancia y seguridad"* comprende el sistema de control de acceso; (4) se erró al interpretar que la referida cláusula 7, otorgada en el 1986, denota que los titulares de la urbanización sólo están obligados al pago de cuotas para el mantenimiento, cuidado y supervisión de las áreas comunes sin incluir los gastos del sistema de control de acceso; y (5) al adjudicar la moción de sentencia sumaria sin considerar *todos* los documentos que obran en autos.

Luego de examinar los argumentos y prueba documental ofrecida por las partes, estamos en posición de resolver. Adelantamos que denegamos la expedición del auto solicitado.

I

Esbozamos a continuación una breve relación de los hechos e incidencias procesales de este caso, los cuales dieron base a la sentencia sumaria parcial que dictó el TPI.

En este caso, la peticionaria presentó una demanda en cobro de dinero contra los recurridos, mediante la cual, les exigió el pago de cuotas alegadamente adeudadas y que estaban destinadas a sufragar los gastos de mantenimiento, no sólo de áreas comunes, sino también de la operación de un sistema de control de acceso sito en la Urbanización Gran Vista I en Gurabo. Ante esa reclamación, los recurridos han contestado que reconocen su obligación al pago de cuotas de mantenimiento, pero sin que se incluya una partida para el mantenimiento y operación del sistema de control de acceso de la referida urbanización. Han alegado que el referido control de acceso fue aprobado mediante resolución u ordenanza municipal en el 2000 sin cumplir con los requisitos de ley.

Los recurridos también reconvinieron, pero su reclamación fue desestimada por el TPI. No solicitaron la revisión de ese dictamen, a saber, la Sentencia Sumaria Parcial de 9 de agosto de 2006 que fue notificada el 17 de agosto de 2006. Ya en el referido dictamen se determinó como un hecho que los recurridos admitían que mediante la escritura de condiciones restrictivas que suscribieron cuando adquirieron el solar de la Urbanización Gran Vista I, el referido instrumento público facultaba a la peticionaria a cobrar una cuota mensual a los titulares de los solares para el mantenimiento y supervisión adecuada de todas las facilidades comunales que ubicaran en la urbanización.

Posteriormente, los recurridos presentaron una solicitud de sentencia sumaria. Comenzaron por destacar que las cuotas que se le reclamaban incluian el concepto del mantenimiento del control de acceso que opera en la urbanización. Indicaron que el referido sistema fue implantado por la peticionaria a inicios de 1990 de manera ilegal. Adujeron la implantación del sistema fue declarada ilegal mediante dictamen que se emitió en otra sala del TPI en un caso con partes distintas a las de éste. Apuntaron que el referido control de acceso obtuvo la aprobación para operar del Municipio de Gurabo en el 2000, pero, que el proceso a esos efectos adoleció de fallas por violar los derechos a los opositores al sistema.

Además de lo anterior, basándose en el contenido de la cláusula número siete (7) de la escritura de condiciones restrictivas, arguyeron que la referida escritura no contempla la obligación de pagar cuotas de

mantenimiento para sufragar los gastos de un sistema de control de acceso o de vigilancia. Tal concepto, alegaron, debía ser objeto de contratación posterior entre los residentes que voluntariamente quisieran subsidiar dicho sistema con la peticionaria.

Los recurridos adujeron que ellos figuraron como opositores al sistema y que jamás firmaron, contrataron o suscribieron documentos de clase alguna que los obligara a aportar para el sistema. Añadieron que la facultad que tendría la peticionaria para cobrar cuotas para sufragar el sistema de control de acceso no surgía de la escritura de condiciones restrictivas, sino de los preceptos y procedimiento de la Ley de Control de Acceso, *supra.* No obstante, según señalaron, la peticionaria no cumplió con los requisitos de la referida ley para lograr la autorización para operar el sistema.

La peticionaria presentó su oposición. Alegó que la escritura de condiciones restrictivas estableció la obligación de los titulares al pago de cuotas de mantenimiento de las áreas comunes o facilidades vecinales, entre las cuales, entendía incluidas el sistema de control de acceso. Aseguró también que cumplieron con la Ley de Control de Acceso, *supra.* Además, trajeron a colación cierta prueba documental (recortes de periódico y de publicidad) que alegadamente probaban que los solares para la urbanización se vendieron con el concepto de acceso controlado.

Luego de examinar las mociones de las partes en solicitud y en oposición de sentencia sumaria, el TPI emitió el dictamen recurrido. El TPI se limitó en esta fase a dilucidar dos asuntos de esta controversia: primero, si existía una servidumbre en equidad debidamente constituida de modo que obligara a los titulares de solares de la Urb. Gran Vista I (incluyendo a los recurridos), al pago de cuotas de mantenimiento del sistema de control de acceso que allí opera; y segundo, si en ausencia de tal servidumbre en equidad, los titulares (incluyendo los recurridos) tenían la obligación de sufragar los gastos de mantenimiento del referido sistema. Colegimos del dictamen recurrido que el TPI detalló los hechos que a su juicio no estaban en controversia en lo que atañe al primer asunto.

El TPI determinó probados los siguientes hechos. Los peticionarios constituyen una corporación sin fines de lucro organizada y creada para poner en vigor las condiciones restrictivas de la referida escritura de condiciones restrictivas de la Urbanización Gran Vista I (Escritura Núm. 2 de 13 de noviembre de 1986), en la cual, figura como otorgante el desarrollador Fermaral Investment, Inc. En la referida escritura se detallaron las condiciones restrictivas que pesarían sobre los solares destinados al desarrollo de la Urb. Gran Vista I. La escritura de condiciones restrictivas fue presentada para inscripción al Registro de la Propiedad en el 1986.

Por otro lado, la recurrida, Maritza Peña Hernández adquirió en el 1989 la titularidad de uno de los solares del proyecto o desarrollo de la Urb. Gran Vista I. En el 1995, aquélla contrajo nupcias con el recurrido Rubén Méndez Caraballo. Los recurridos construyeron entre 1996 y 1997 su residencia en el solar en cuestión. Durante el tiempo en que llevaron a cabo las labores de construcción, pagaron cuotas de mantenimiento. No obstante, en el mismo año 1997 dejaron de hacerlo. Posteriormente, el 29 de diciembre de 2000, el Municipio de Gurabo aprobó la referida Ordenanza Número 12. También, como se indicó antes, el TPI determinó que los recurridos reconocen que deben pagar cuotas de mantenimiento; sin embargo, entienden que no están obligados a pagar cuotas para sufragar el sistema de control de acceso. Por ello, acceden a pagar lo que adeudan por cuotas de mantenimiento siempre que no se incluya en la cuota una partida para cubrir lo relacionado al sistema de control de acceso.

En su dictamen, el TPI destacó dos fragmentos de la escritura sobre condiciones restrictivas de la urbanización en cuestión. El texto refiere a la cláusula número siete (7) de la referida escritura y en la misma se expone:

*"Siete (7): EL COMITÉ DE CONTROL ARQUITECTÓNICO Y MANTENIMIENTO PARA LA URBANIZACIÓN GRAN VISTA: Con el propósito de poner en vigor las condiciones restrictivas que se imponen a las unidades residenciales que puedan ser construidas en la urbanización GRAN VISTA, y así mismo, con el*

*propósito de que se provea un mantenimiento, cuidado y/o supervisión adecuada de todas las áreas comunes, parques, cualesquiera otras facilidades para uso o beneficio común que se ubiquen en dicha urbanización, se creará, compuesta por los titulares de la urbanización GRAN VISTA una corporación local de fines no pecuniarios ("LA CORPORACIÓN"). La CORPORACIÓN designará un comité conocido como el Comité de Control Arquitectónico y Mantenimiento de la Urbanización GRAN VISTA ("El Comité"), al que por la presente se le confiere autoridad para poner en vigor las restricciones aquí constituidas y para implementar un sistema para el mantenimiento, cuido y supervisión de áreas comunes, parques y facilidades, incluyendo la facultad de cobrar a cada uno de los titulares de la urbanización, una cuota mensual para tales propósitos, cuya cuota, hasta tanto ésta sea modificada por disposición del Comité, lo será la suma mensual de DIEZ DOLARES ($10.00) por solar. Todo titular de algún solar vendrá obligado a satisfacer la referida cuota mensual según ésta sea modificada, de tiempo en tiempo, por el Comité. La falta de pago de las referidas cuotas en tiempo, constituirá un gravamen sobre el solar de cada dueño y, por lo tanto, la persona natural o jurídica que tenga a su cargo el mantenimiento, conservación, cuido o supervisión de tales áreas comunes, parques y facilidades, podrá efectuar el cobro de dichos cargos en cualquier forma que sea legalmente aceptable.*" (Énfasis nuestro).

Luego, se citó otra parte de la misma cláusula número (7) que lee:

"*Ni FERMARAL, ni sus representantes, agentes, oficiales y/o empleados tienen obligación o responsabilidad alguna por el cuido, mantenimiento o supervisión de cualquiera facilidades de vigilancia que puedan estar ubicadas en la urbanización GRAN VISTA. Tampoco, hay obligación o responsabilidad alguna por parte de FERMARAL [...] de implantar un sistema de vigilancia y seguridad o de contratar y hacer el pago de un servicio de guardia o vigilancia para la urbanización GRAN VISTA. Sin embargo, una vez la CORPORACION designe sus miembros y esté totalmente compuesta la urbanización GRAN VISTA, dicha CORPORACION y/o el Comité, así compuestos, estarán facultados, a su discreción, para poner en uso tales facilidades, implementando o contratando un sistema de vigilancia y seguridad par dicha urbanización.*

*La CORPORACION y/o el Comité, así integrados, tendrá poder y facultad para convocar a los residentes y/o titulares de la urbanización GRAN VISTA y reunirse con éstos, a los fines de tomar acuerdos en lo relativo a la implementación o contratación de una sistema de vigilancia, seguridad y/o mantenimiento para dicha urbanización. De igual forma, la CORPORACION y/o el Comité podrá contratar con aquellos residentes y/o titulares de la urbanización GRAN VISTA que deseen participar y aportar a un programa de vigilancia y seguridad para dicha urbanización. Para poner en vigor estos poderes, la CORPORACION y/o el Comité estarán facultados para: (1) cobrar cuotas a los residentes y/o titulares de la urbanización GRAN VISTA que hayan contratado con la CORPORACION y/o el Comité para establecer un programa de vigilancia y seguridad, (2) contratar con aquellas compañías de seguridad que provean servicio de guardia y vigilancia; (3) hacer los pagos a éstos, y (4) mantener y cuidar las facilidades y áreas comunes. En general, sin que esta enumeración implique limitación, la CORPORACION y/o el Comité podrá tomar cualquier tipo de decisión en lo concerniente a la vigilancia, seguridad, supervisión, cuido y mantenimiento de áreas y facilidades comunes de la urbanización.*" (Énfasis nuestro).

En su análisis, el TPI llamó la atención al hecho de que en ambos fragmentos se usan los términos "*mantenimiento*", "*cuidado*" y "*supervisión*" sin que se haga referencia específica a un "*sistema de control de acceso*". **Sin embargo, el TPI interpretó que en el segundo texto se hace referencia de manera expresa a un "*servicio de guardia y vigilancia*", "*sistema de vigilancia y seguridad*", términos dentro de los cuales podría estar comprendido un sistema de control de acceso.** También destacó que en el primer texto se hace referencia continua al cuidado, mantenimiento y supervisión de las "*áreas comunes, parques y facilidades*", mas, en el segundo texto, no se hace tal cualificación, sino que se hace referencia específica a la vigilancia y seguridad "*de la urbanización*".

Concluyó el TPI que la cuota que se establece como condición restrictiva sobre los titulares, mediante la Escritura Núm. 2, atañe principalmente a los gastos de cuidado, mantenimiento y supervisión de las *"áreas comunes"*, tales como servicios de limpieza, mantenimiento de áreas verdes y arreglo de instalaciones comunes entre otros. Lo anterior, sin incluir los servicios de vigilancia y seguridad *"de la urbanización"*, concepto dentro del cual puede incluirse el sistema de control de acceso. Razonó el TPI que del texto de la referida escritura, la implantación del sistema de control de acceso, y el ejercicio de la facultad de la peticionaria para cobrar cuotas para sufragar el mismo, estaba supeditado al *"acuerdo previo"* entre la peticionaria y los titulares de los solares que lo desearan. En resumen, se interpretó que la Escritura Núm. 2 sobre condiciones restrictivas obligaba a los titulares de solares de la Urb. Gran Vista I (incluyendo a los recurridos) al pago de cuotas para dar mantenimiento, cuidado y supervisión a las áreas comunes, sin que dicha responsabilidad se extendiera a sufragar la implantación y mantenimiento de un sistema de control de acceso.

Tomando en cuenta lo anterior junto con el derecho aplicable, llegamos a las siguientes conclusiones.

## II

Se ha señalado que en términos jurídicos, la servidumbre en equidad es considerada un **contrato** entre las partes, ya sea porque éstas acuerdan gravar sus propiedades para delimitar su uso o el tipo de edificación que se puede efectuar sobre éstas; o porque adquirentes posteriores de la propiedad gravada, conociendo las restricciones inscritas en el Registro de la Propiedad, aceptan someterse a éstas. *Residentes Parkville Sur v. Diaz Luciano*, 159 D.P.R. 374 (2003); *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 D.P.R. 521 (2002); *Rodríguez et als. v. Gómez et al.*, 156 D.P.R. 307 (2002).

Para que una propiedad inmueble sea gravada válidamente mediante una servidumbre en equidad, sus cláusulas restrictivas deben constar en una escritura pública, y, según se ha señalado ya, deben inscribirse en el Registro de la Propiedad. En virtud de ello, las cláusulas restrictivas de una servidumbre en equidad adquieren un rango de contratos privados de naturaleza real, pues *"[u]na vez son inscritas en el Registro de la Propiedad, se considera que las restricciones constituyen derechos reales oponibles erga omnes, lo que crea entre los predios afectados 'una relación de servidumbres recíprocas, pues cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización'"*. *Residentes Parkville Sur v. Diaz Luciano*, supra. A esos efectos, **por ser contratos privados de naturaleza real, el principio rector para determinar el significado y el alcance de las condiciones restrictivas de una servidumbre en equidad es conocer la voluntad real de las partes al momento de establecer las restricciones sobre las propiedades.** *Residentes Parkville Sur v. Diaz Luciano, supra*. En otras palabras, **lo realmente importante al interpretar las cláusulas restrictivas de la servidumbre en equidad es conocer cuál fue el verdadero fin que se perseguía al gravar las propiedades mediante la servidumbre en equidad.**

Una vez se reconoce la validez y vigencia de las cláusulas restrictivas de una servidumbre en equidad en un caso particular, **los tribunales deben hacer cumplir a cabalidad los propósitos del acuerdo al que las partes han aceptado someterse al adquirir la propiedad gravada.** Dicha normativa tiene como finalidad **preservar la autonomía de la voluntad de las partes** reflejada en las cláusulas restrictivas de la servidumbre en equidad. Debido a ello, **los tribunales no tienen facultad para soslayar dicha voluntad por criterios ajenos a ésta, salvo que sea contraria a la ley, a la moral o al orden público.** *Residentes Parkville Sur v. Díaz Luciano, supra*; Art. 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. §3372. Sabido es, que en el ámbito de las obligaciones y contratos, es una doctrina fundamental que cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. *Residentes Parkville Sur v. Díaz Luciano, supra*; Art. 1233 del Código Civil de Puerto Rico, 31 L.P.R.A. §3471.

## III

En el caso ante nuestra consideración, adoptamos el razonamiento del TPI. A esos fines, estimamos que el referido foro identificó correctamente dos de los asuntos relevantes a la resolución de la controversia. El primer

asunto refiere a si surge de la escritura de condiciones restrictivas que suscribieron los recurridos cuando adquirieron un solar del proyecto de la Urb. Gran Vista I, la obligación de pagar cuotas para el mantenimiento y operación de un sistema de control de acceso. Segundo, si dicha obligación surgía de la Ley de Control de Acceso mediante la cual, presumiblemente, la peticionaria logró la aprobación de la Ordenanza Municipal que autorizó (validó o ratificó) la operación de dicho sistema.

El TPI detalló que no había controversia sobre los hechos relacionados al primer asunto, y de esta forma, resolvió mediante sentencia sumaria parcial. Por otro lado, destacó los hechos y asuntos que quedaban en controversia, y esto, después de su examen de las alegaciones y de la evidencia presentada y proveyó para la celebración de una vista posterior. Todo ello, es cónsono con la Regla 36.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 36.4.

La discusión del asunto resuelto mediante el dictamen recurrido implicó la interpretación de la escritura de condiciones restrictivas que recaen sobre lo solares y construcciones de la Urb. Gran Vista I. Lo expuesto y suscrito por las partes en la referida escritura se considera como un contrato, y en este caso, estimamos que el TPI cumplió con su deber de examinar sus términos y develar correctamente la intención de los contratantes. Tal y como indicó dicho foro, del texto de la referida escritura no surge que la desarrolladora hubiera expuesto *"de manera expresa"* que se le obligaba a los titulares y futuros adquirentes de solares dentro del proyecto al pago de cuotas de mantenimiento para sufragar un sistema de control de acceso. Distinto fue con el mantenimiento, cuido y supervisión de áreas comunes, parques y facilidades, para lo cual se proveyó expresamente el cobro de una cuota mensual en la misma escritura.

Por otro lado, la desarrolladora sí dispuso de manera expresa que no se obligaba al cuido, mantenimiento, supervisión o a *"implementar"* (implantar) el sistema o facilidades de vigilancia y seguridad que ubicaran en el proyecto. Esta facultad se le delegó a la peticionaria. Entendemos, al igual que el TPI, que el contenido de esta cláusula se refería a la implantación y operación de un sistema de control de acceso. Además, entendemos igualmente que recaía sobre la peticionaria la facultad para llevar a cabo tales operaciones, incluyendo la de cobrar cuota para sufragar tal sistema.

También estamos de acuerdo con que el ejercicio de la facultad de la peticionaria para llevar a cabo tales gestiones estaba condicionado a la previa *"convocatoria"* de los titulares o residentes de la urbanización *"a los fines de tomar acuerdos en lo relativo a la implementación o contratación de un sistema de vigilancia, seguridad y/o mantenimiento para dicha urbanización"*. Así se desprende del texto de la escritura en cuestión. Más aún, los términos de la escritura, cuyo alcance son como los de un contrato privado, indicaban que el cobro de cuotas sería respecto a los titulares que hubieran expresado su deseo de participar y aportar para el programa de vigilancia, y que a esos efectos, hubieran contratado previamente con la peticionaria.

El TPI se sirvió correctamente de la prueba documental que obra en el expediente para llegar a la determinación parcial de la que se recurre. Su interpretación de los términos de la escritura de condiciones restrictivas de la Urb. Gran Vista I nos parece acertada, y además, hace justicia a los propósitos del acuerdo que los recurridos aceptaron someterse cuando adquirieron el solar en la urbanización en cuestión. No se cometieron los errores señalados, los cuales fueron todos dirigidos a atacar la interpretación que hizo el TPI de los términos de la referida escritura, y además, la forma en que se sirvió en mayor o menor medida de la prueba que se aportó.

No obstante lo anterior, debemos aclarar lo siguiente.

La determinación parcial que emitió el TPI se limita a establecer que bajo la escritura de condiciones restrictivas no cabe interpretarse que se imponía *"de manera expresa"* la obligación sobre los titulares para sufragar la implantación y mantenimiento de un sistema de control de acceso. Pero, ello no menoscaba la

posibilidad de que por aplicación de alguna disposición de la Ley de Control de Acceso, los titulares de solares de dicha urbanización queden sujetos a pagar cuotas para la implantación, mantenimiento y operación de un sistema de control de acceso. Mencionamos lo anterior en vista de que las circunstancias de esta urbanización han generado, junto a otras tantas, múltiples pleitos. Lo último, por la particularidad de haber sido proyectos que alegadamente fueron promocionados o vendidos con el atractivo de tener un sólo acceso o acceso controlado, y ello, con anterioridad a la aprobación de la Ley de Control de Acceso.

Entendemos que esta situación *sui generis* será objeto de análisis por el TPI cuando ventile el segundo asunto que dejó pendiente de resolución en este caso. La particularidad de este caso hará meritorio, entre otras cosas: aclarar hechos en controversia relacionados a la fecha en que se construyeron las facilidades de control de acceso; el desfile y análisis de prueba relacionada a si en efecto se exhibió, ofreció o promocionó la urbanización como una con control de acceso; si se siguieron los canales y procedimientos correspondientes para ajustar, atemperar o validar el sistema de control de acceso de la urbanización a la Ley de Control de Acceso (prestando atención a las facilidades que se hubieran construido antes o después de promulgada la Ley de Control de Acceso con sus respectivas enmiendas y disposiciones transitorias). ■

En el ínterin, avalamos lo dispuesto por el TPI en la sentencia sumaria parcial recurrida, y por consiguiente, denegamos la expedición del auto solicitado.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones