ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **IVETTE MELECIO BERRIOS y WILLIAM DÁVILA MUNTANER**<br><br>Recurrentes<br><br>v.<br><br>**DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO OFICINA DE GERENCIA DE PERMISOS (OGPe)**<br><br>Recurrida | KLRA202500010 | **REVISIÓN** procedente del **Departamento de Desarrollo Económico y Comercio Oficina de Gerencia de Permisos**<br><br>Caso Núm.:<br>**2022-456755-CCO-010839**<br><br>Sobre:<br>Construcción |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 18 de marzo de 2025.

Comparece ante nos la señora Ivette Melecio Berríos y el señor William Dávila Muntaner (en conjunto, parte recurrente) mediante un recurso de revisión judicial intitulado *Recurso de Revisión Administrativa* por el que solicitan que revoquemos una *Resolución sobre Consultas de Construcción* emitida por la Junta Adjudicativa de la Oficina de Gerencia de Permisos (OGPe o parte recurrida) el 17 de julio de 2024.[1] Por medio de esta última, la Junta Adjudicativa determinó favorable la solicitud de construcción presentada por la señora Annette Gamalis Bergollo Huertas (Sra. Bergollo Huertas) en el caso número 2022-456755-CCO-010839 con el propósito de legalizar una construcción en su propiedad.

Por su parte, la Sra. Bergollo Huertas y su esposo, el señor Eliel Miranda, (en conjunto, parte proponente) radicaron un *Alegato*

---

[1] Apéndice del recurso de revisión judicial, Anejo II, págs. 18-28. Notificada el 5 de agosto de 2024.

*en Oposición a Recurso de Revisión Administrativa* el 28 de febrero de 2025.

A pesar de haberle concedido la oportunidad de presentar su alegato en oposición, la OGPe no compareció.

Por los fundamentos que discutiremos a continuación, confirmamos la *Resolución sobre Consultas de Construcción* recurrida.

## I.

El caso de marras tiene su génesis el 6 de septiembre de 2022 cuando la Sra. Bergollo Huertas, por conducto del ingeniero Rubén Ortiz Galarza, presentó una solicitud de consulta de construcción ante la OGPe bajo el caso número 2022-456755-CCO-010839.[2] Lo anterior con el propósito de legalizar una ampliación de su propiedad localizada en la Urbanización Las Veredas de Camuy, Calle Alelí E-1; y ubicada en el distrito calificado Residencial Intermedio (R-1), según el Mapa de Calificación de Suelos del Municipio de Camuy. Esta ampliación abarcó un dormitorio, una terraza y una verja, la cual conllevaba una variación en la ocupación y en los patios de la propiedad.

Por su parte, la parte recurrente presentó una solicitud de intervención el 9 de septiembre de 2022, al amparo de la Sección 3.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38 del 30 de junio de 2017, según enmendada, 3 LPRA sec. 9645; y la Sección 2.1.9.9 del Reglamento Conjunto 2020, Reglamento Núm. 9233, Junta de Planificación, 2 de diciembre de 2020, págs. 30-31.[3] Adujo que las obras construidas en la propiedad de la parte proponente violaban las condiciones

---

[2] *Íd.*, Anejo I, pág. 1. Este hecho procesal se redactó, según surge de la *Resolución de Revisión Administrativa*; véase además, *Íd.*, Anejo X, págs. 105-119.

[3] *Íd.*, Anejo VII, pág. 77. Este hecho procesal se redactó, según surge de la *Resolución sobre Solicitud de Intervención*.

restrictivas de la urbanización, invadiendo parte de su terreno, y menoscabando el disfrute y el libre uso de su propiedad.

El 14 de septiembre de 2022, la OGPe emitió una *Resolución sobre Solicitud de Intervención* donde declaró Ha Lugar la petición de intervención de la parte recurrente.[4]

Luego de celebrar unas vistas públicas los días 27 de enero de 2023 y el 31 de marzo de 2023,[5] la OGPe emitió una determinación no favorable de la consulta de construcción en cuestión el 10 de octubre de 2023.[6]

Inconforme, la parte aquí proponente presentó una *Revisión Administrativa* el 30 de enero de 2024.[7] En lo pertinente, expuso que la OGPe había errado al denegar la solicitud de consulta de construcción en cuestión, pues indicó que existía un claro error manifiesto en la apreciación de la prueba y que dicha consulta cumplía con los requisitos reglamentarios.

Por su parte, la parte recurrente radicó un *Escrito en Oposición a Consulta de Construcción* el 5 de marzo de 2024.[8] En síntesis, reiteró que las obras construidas por la parte proponente se extralimitaban sobre sus suelos, afectaban la ventilación e iluminación de sus propiedades, e infringían las condiciones restrictivas de la urbanización.

Así las cosas, el 7 de marzo de 2024, un Oficial Examinador celebró una vista administrativa.[9]

El 29 de abril de 2024, la Junta Administrativa de la OGPe emitió una *Resolución de Revisión Administrativa* por la que resolvió devolver el caso a la OGPe para su reevaluación consistente con los

---

[4] *Íd.*, págs. 77-81.
[5] *Íd.*, Anejo I, pág. 3. Este hecho procesal se redactó, según surge de la *Resolución de Revisión Administrativa.*
[6] *Íd.*, Anejo IV, pág. 47. Este hecho procesal se redactó, según surge de la *Resolución de Revisión Administrativa.*
[7] Apéndice del alegato en oposición, Anejo 7, págs. 44-60.
[8] *Íd.*, Anejo 8, págs. 61-74; véase además, Anejo 3, págs. 17-39.
[9] Apéndice del recurso de revisión judicial, Anejo IV, pág. 55. Este hecho procesal se redactó, según surge de la *Resolución de Revisión Administrativa.*

cambios que se le realizaron al proyecto en cuestión, según acordado por la parte aquí proponente y la OGPe.[10] También dejó sin efecto la determinación no favorable de la solicitud de consulta de construcción en cuestión.

Luego de ello, la parte recurrente radicó un *Escrito en Solicitud de Archivo a Consulta de Construcción por Falta de Jurisdicción y Reafirmando Oposición al Proyecto* el 24 de mayo de 2024.[11]

Sin embargo, el 17 de julio de 2024, la OGPe emitió una *Resolución sobre Consulta de Construcción.*[12] Por medio de esta, determinó favorable la consulta del caso de marras, y resolvió que la vigencia de esta sería de dos (2) años, a partir de la notificación de la consulta.

Insatisfecha, la parte recurrente presentó una *Solicitud de Revisión Administrativa* el 9 de agosto de 2024 por la cual planteó que la OGPe erró al aprobar la petición de consulta de construcción. Adujo que la obra invadía suelo ajeno y se realizó contrario a las condiciones restrictivas de la urbanización. Además, arguyó que la agencia administrativa emitió una determinación sin haber atendido adecuadamente la prueba incontrovertible del expediente, ignorando prueba esencial y pertinente.[13]

El 26 de agosto de 2024, la OGPe emitió una *Notificación Acogiendo Solicitud de Revisión Administrativa.*[14]

Así las cosas, una Oficial Examinadora celebró una vista el 15 de octubre de 2024.[15]

---

[10] *Íd.*, págs. 47-59.
[11] *Íd.*, Anejo XII, págs. 131-133.
[12] *Íd.*, Anejo II, págs. 18-28. Notificada el 5 de agosto de 2024.
[13] *Íd.*, Anejo V, págs. 60-71.
[14] *Íd.*, Anejo VI, págs. 72-76.
[15] *Íd.*, Anejo I, pág. 8. Este hecho procesal se redactó, según surge de la *Resolución de Revisión Administrativa.*

El 9 de diciembre de 2024, la OGPe emitió una *Resolución de Revisión Administrativa* donde denegó la petición de revisión administrativa presentada por la parte recurrente.[16]

Inconforme, el 8 de enero de 2025, la parte recurrente presentó un recurso de revisión judicial ante nos y presentó los siguientes señalamientos de error:

**ERRÓ LA DIVISIÓN DE REVISIÓN ADMINISTRATIVA DE LA OGPE AL DECLARAR NO HA LUGAR LA REVISIÓN ADMINISTRATIVA PRESENTADA POR LOS RECURRENTES Y, POR CONSIGUIENTE, AL CONFIRMAR LA DETERMINACIÓN FAVORABLE DE LA CONSULTA DE CONSTRUCCIÓN PARA LEGALIZAR LA AMPLIACIÓN DE UNA RESIDENCIA, CUYA LEGALIZACIÓN TIENE EL EFECTO DE LEGALIZAR UNA ESTRUCTURA EDIFICADA EN SUELO AJENO. TODO ESTO EN UN TRÁMITE PRESENTADO SIN QUE LA PARTE RECURRIDA OSTENTE LEGITIMACIÓN ACTIVA Y EN FRANCA CONTRAVENCIÓN DE LAS CONDICIONES RESTRICTIVAS ESTABLECIDAS PARA LA URBANIZACIÓN LAS VEREDAS.**

**ERRÓ LA DIVISIÓN DE REVISIÓN ADMINISTRATIVA DE LA OGPE AL DECLARAR NO HA LUGAR LA REVISIÓN ADMINISTRATIVA PRESENTADA POR LOS RECURRENTES Y AL RATIFICAR LA DETERMINACIÓN FAVORABLE DE LA CONSULTA DE CONSTRUCCIÓN APLICANDO INCORRECTAMENTE EL DERECHO Y ACTUANDO DE MANERA ARBITRARIA Y CAPRICHOSA, AL NO BASARSE EN HECHOS RELEVANTES NI EN EVIDENCIA SUFICIENTE, FUNDAMENTÁNDOSE EN UN EXPEDIENTE INCOMPLETO, DEFICIENTE Y SIN INCLUIR EL INFORME DEL OFICIAL EXAMINADOR.**

Por su parte, la parte proponente radicó un *Alegato en Oposición a Recurso de Revisión Administrativa* el 28 de febrero de 2025. Expuso que la parte recurrente no logró rebatir la presunción de corrección y razonabilidad de la determinación recurrida para que procediera su revocación. Además, sostuvo que, aunque la parte recurrente indicó que la construcción se extralimitaba, dicha parte conocía que la parte proponente iba a eliminar la zapata de la verja y a realizar un rediseño del muro para que no hubiese invasión de terreno. Por otro lado, sostuvo que, a la fecha de la presentación de

---

[16] *Íd.*, págs. 1-17.

la consulta, no se habían inscrito las escrituras de condiciones restrictivas en el Registro de la Propiedad, y que las mismas no tenían disposición alguna prohibiendo el trámite en cuestión. Por último, arguyó que la determinación de la OGPe estuvo basada en la totalidad del expediente administrativo.

Aunque le concedimos la oportunidad de presentar su alegato en oposición, la OGPe no compareció.

**II.**

**A.**

La LPAU, *supra*, establece el alcance de la revisión judicial respecto a las determinaciones de las agencias administrativas. A la luz de esta ley y la jurisprudencia aplicable, la revisión judicial consiste, esencialmente, en determinar si la actuación de la agencia se dio dentro de las facultades que le fueron conferidas por ley, si es compatible con la política pública que la origina, y si es legal y razonable. *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 590-591 (2020); *Rolón Martínez v. Caldero López*, 201 DPR 26, 35 (2018). Es decir, que este tipo de revisión busca limitar la discreción de las agencias y garantizar que estas desempeñen sus funciones de acuerdo con los confines de la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). De la mano con esto, es norma reiterada de derecho que los foros revisores le deben conceder gran deferencia y consideración a las decisiones de las agencias administrativas, debido a la vasta experiencia y el conocimiento especializado que poseen estas sobre los asuntos que le fueron delegados. *Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Rolón Martínez v. Caldero López, supra,* pág. 35. Conforme a ello, los tribunales deben ser cautelosos al intervenir con las decisiones de los organismos administrativos. *Metropolitana, S.E. v. A.R.Pe.,* 138 DPR 200, 213 (1995); *Gallardo v. Clavell,* 131 DPR 275, 289–290 (1992).

Por las razones antes aludidas, las decisiones de las agencias administrativas gozan de una presunción de regularidad y corrección. *Capó Cruz v. Junta de Planificación, supra,* pág. 591; *Rolón Martínez v. Caldero López, supra*, pág. 35; *García v. Cruz Auto Corp., supra,* pág. 892. La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *Misión Ind. P.R. v. J.P.,* 146 DPR 64, 130 (1998).

Así, al momento de revisar una decisión administrativa, el criterio rector para los tribunales debe ser la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 77-78 (2004). Cónsono con ello, será necesario determinar si la agencia actuó de forma arbitraria, ilegal o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Rolón Martínez v. Caldero López, supra,* pág. 35.

Según ha quedado establecido como norma general, el ejercicio de revisión judicial de una decisión administrativa se limita a tres asuntos: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial que obra en el expediente administrativo; y (3) la revisión completa y absoluta de las conclusiones de derecho. *Asoc. FCIAS. v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010).

De esta forma, en el contexto de las determinaciones de hechos realizadas por las agencias administrativas, nuestro más alto foro ha pautado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "'si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad'". *Otero Mercado v. Toyota,* 163 DPR 716, 727-728 (2005) (*citando a Pacheco v. Estancias,* 160 DPR 409, 432 (2003)); *Domínguez v. Caguas*

*Expressway Motors, Inc.*, 148 DPR 387, 397 (1999). Dentro de este marco, la evidencia sustancial se entiende como "aquella evidencia pertinente que 'una mente razonable pueda aceptar como adecuada para sostener una conclusión'". *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999) (*citando a Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 437 (1997)). Por ello, la parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la ... prueba presentada ... y hasta el punto que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración.
>
> *Metropolitana S.E. v. A.R.Pe.*, *supra*, pág. 213 (*citando a Hilton Hotels International, Inc. v. Junta de Salario Mínimo,* 74 DPR 670, 686 (1983)).

La parte recurrente tiene la obligación de derrotar la presunción de corrección de los procesos y de las decisiones administrativas. *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 DPR 521, 532 (1993). Si no demuestra que existe esa otra prueba, las determinaciones de hechos del organismo administrativo deben ser sostenidas por el tribunal revisor. *Ramírez v. Depto. de Salud, supra*, pág. 905.

Ahora bien, cuando se trate de conclusiones de derecho que no envuelven interpretaciones dentro del área de especialización de la agencia, éstas se deben revisar por los tribunales sin circunscribirse al razonamiento que haya hecho la agencia. *Pacheco v. Estancias, supra,* págs. 432-433; *Rivera v. A & C Development Corp.*, 144 DPR 450, 461 (1997). Cuando las determinaciones de las agencias estén entremezcladas con conclusiones de derecho, el tribunal tendrá amplia facultad para revisarlas, como si fuesen una cuestión de derecho propiamente. *Pacheco v. Estancias, supra*, págs. 432-433. En nuestro ordenamiento jurídico, es norma reiterada que,

en el proceso de revisión judicial, los tribunales tienen la facultad de revocar al foro administrativo en materias jurídicas. Véase, además, la sec. 4.5 de LPAU, *supra,* sec. 9675. Si bien la revisión judicial no debe servir para sustituir el criterio o la interpretación de la agencia administrativa de forma automática, los tribunales podrán descartar ese criterio, cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Caldero López, supra,* pág. 36; *Capó Cruz v. Junta de Planificación, supra,* pág. 591; *Rebollo v. Yiyi Motors, supra,* págs. 76-77.

En ese sentido, aun cuando se permiten las revisiones judiciales sobre determinaciones administrativas, "los tribunales revisores debemos conceder[les] deferencia a las decisiones de las agencias administrativas, pues estas gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración, lo cual ampara sus dictámenes con una presunción de legalidad y corrección". *Capó Cruz v. Junta de Planificación, supra,* pág. 591; *Torres Rivera v. Policía de PR,* 196 DPR 606, 626-627 (2016). Por consiguiente, los tribunales solo deben intervenir con las decisiones administrativas cuando estas han actuado de forma arbitraria, ilegal, irrazonablemente o cuando se lesionan derechos constitucionales fundamentales. *Capó Cruz v. Junta de Planificación, supra,* pág. 592; *Torres Rivera v. Pol. de PR, supra,* pág. 626; *Asoc. FCIAS v. Caribe Specialty II, supra,* pág. 941; *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009). En esos casos, cederá la deferencia que merecen las agencias administrativas en la aplicación e interpretación de las leyes y los reglamentos que administran. *Rolón Martínez v. Caldero López, supra,* 36; *Torres Rivera v. Pol. de PR, supra,* págs. 627-628.

En suma, la referida deferencia debe ceder cuando se demuestre que: (1) la decisión no está basada en evidencia

sustancial; (2) la agencia ha errado en la aplicación de la ley; (3) la actuación de la agencia resulta ser arbitraria, irrazonable o ilegal; y (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012) (*citando a Empresas Ferrer v. A.R.PE.*, 172 DPR 254, 264 (2007)).

**B.**

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, Ley Núm. 161 del 1 de diciembre de 2009 (Ley Núm. 161-2009), según enmendada, 23 LPRA secs. 9011 *et seq.*, se creó para "establecer el marco legal y administrativo que regiría la solicitud, evaluación, concesión y denegación de permisos de uso y de construcción y desarrollo de terrenos por parte del gobierno". *Horizon v. J.T.A. Revisora, RA Holdings*, 191 DPR 228, 236 (2014). Dicha disposición también estableció la Junta Adjudicativa de la OGPe con el propósito de evaluar y emitir licencias y determinaciones finales para consultas de ubicación, al igual que para variación en uso y construcción. Artículo 2.5 de la Ley Núm. 161-2009, *supra*, sec. 9012d. En lo pertinente, la Junta Adjudicativa está encargada de darle trámite a las solicitudes de permisos discrecionales presentados ante la Oficina de Gerencia. Ley Núm. 161-2009, *supra*. (Exposición de Motivos).

Por su lado, la División de Revisiones Administrativas de la OGPe posee la facultad de revisar las actuaciones y determinaciones de la Junta Adjudicativa, entre otros. Artículo 11.1 de la  Ley Núm. 161-2009, *supra*, sec. 9021m; Sección 11.1.2.1 del Reglamento Conjunto 2020, *supra*, pág. 734. Una vez se presenta una solicitud de revisión administrativa, el Juez Administrativo o Alterno tendrá quince (15) días para acoger la solicitud o rechazarla de plano. Sección 11.1.2.6 del Reglamento Conjunto 2020, *supra*, págs. 735-

736. Además, de determinarse que se va a considerar este tipo de petición, se evaluará a base de los siguientes criterios:

> a. El descubrimiento de nueva evidencia pertinente y esencial relacionada con el caso, cuya admisibilidad haga más probable una determinación contraria a la tomada y que a pesar de una diligencia razonable no pudo haber sido descubierta antes de la determinación de la OGPe, la Junta Adjudicativa, PA, Municipio Autónomo con Jerarquía de la I a la III.
> b. La comisión de un error sustantivo o de procedimiento que convierta la decisión en una contraria a derecho.
> c. La necesidad de corregir la decisión de forma que el interés público quede mejor protegido.

> Sección 11.1.2.7 del Reglamento Conjunto 2020, *supra*, pág. 736.

Además de lo anterior, la División de Revisiones Administrativas podrá celebrar vistas, las cuales podrán ser delegadas a los Oficiales Examinadores, para recibir prueba adicional que sustente las alegaciones de las partes y le permite adjudicar el caso. Artículo 11.9 de la Ley Núm. 161-2009, *supra*, sec. 9021u; Artículo 11.3 (h) de la Ley Núm. 161-2009, *supra*, sec. 9021o.

## C.

El Distrito R-I "se establece para identificar áreas residenciales desarrolladas o que puedan desarrollarse y en donde se permitirán diferentes tipos de viviendas". Sección 6.1.3.1 del Reglamento Conjunto 2020, *supra*, pág. 360; Sección 6.1.3.2 del Reglamento Conjunto 2020, *supra*, pág. 360. A este distrito se le pueden realizar variaciones de uso y a los parámetros de construcción. Sección 6.1.3.4 del Reglamento Conjunto 2020, *supra*, pág. 363. Es importante notar que, "[t]oda variación deberá ser solicitada por escrito por el dueño o un representante autorizado del dueño de la propiedad para la cual solicita la misma; señalando los motivos, fundamentos y razones en apoyo de su solicitud". Sección 6.3.2.2 del Reglamento Conjunto 2020, *supra*, pág. 475.

En esa misma línea, una solicitud de consulta, entre otros tipos de peticiones, "será promovida por el dueño, optante o arrendatario de la propiedad con autorización, por sí o a través de su representante autorizado por el Jefe de la Agencia o su representante autorizado en caso de un proyecto público". Sección 2.1.9.5 del Reglamento Conjunto 2020, *supra*, pág. 28. Además, tendrá que incluirse prueba fehaciente que establezca legitimación activa de que el proponente es dueño, optante o arrendatario debidamente autorizado por el dueño, mediante copia de los siguientes documentos: (1) escritura pública; (2) contrato de arrendatario; (3) contrato de opción de compra; (4) certificación registral; (5) declaración de herederos; (6) transacción de terrenos debidamente aprobada por la JP; y (7) de tratarse de una persona jurídica, una documentación que acredite su existencia y autorización para hacer negocios en Puerto Rico o Estados Unidos. *Íd.*

En lo pertinente, una consulta de construcción es aquel "[t]rámite ante la OGPe, sobre un proyecto de uso ministerial, pero que conlleva variaciones a los parámetros de construcción del distrito donde ubica, el cual será adjudicado por la Junta Adjudicativa o Municipio Autónomo con Jerarquía de la I a la III11". Tomo XII (III)(B)(148) del Reglamento Conjunto 2020, *supra*, pág. 798. Sobre esta variación de construcción, se dispone que:

    a. La variación en construcción, lotificación u otras no van dirigidas a alterar el uso permitido en el distrito, sino a dispensar al propietario del cumplimiento de uno o más de los requisitos que establece el Reglamento Conjunto, para la zona o distrito de calificación donde ubica o radica el inmueble o propiedad.

    b. La parte interesada que solicita una variación según antes señalado, al contrario de aquel que invoca la variación en uso, desea seguir utilizando la propiedad para el uso permitido por la reglamentación, pero necesita que se le exima de uno de los requisitos establecidos en el distrito de calificación para asegurar la viabilidad del uso permitido.

c. Esta disposición reglamentaria aplicará de igual manera en las Áreas de Planificación Especial alrededor de Puerto Rico.

Sección 6.3.2.1 del Reglamento Conjunto 2020, *supra,* págs. 474-475.

Los criterios que se deberán considerar para la aprobación de variaciones en consultas de construcción son:

No podrá autorizarse una variación en construcción, lotificación u otras, en todo o en parte, a menos que:

a. Que la variación sea necesaria para la preservación y el disfrute de un derecho de propiedad y se demuestre que la variación aliviará un prejuicio claramente demostrable.

b. Que la autorización de tal variación no afectará adversamente el disfrute y valor de las pertenencias cercanas en el uso presente y para cualquier otro uso futuro permitido.

c. Que el peticionario, a su vez, está en disposición de aceptar las condiciones y requisitos adicionales a los requisitos reglamentarios que el Secretario Auxiliar de la OGPe o Municipio Autónomo con Jerarquía de la I a la III le imponga para beneficio o protección del interés público.

d. Solicitar comentarios a la Unidad de Hidrogeología de la JP en áreas propensas a inundaciones o a deslizamientos de terrenos.

e. No afecte la integridad ecológica de la Reserva Agrícola, Natural, Áreas de Planificación Especial o se ocasione peligro a los recursos naturales, históricos, culturales o agrícolas existentes.

Sección 6.3.2.4 del Reglamento Conjunto 2020, *supra,* págs. 475-476.

Asimismo, nuestro máximo foro ha expresado en múltiples ocasiones que las variaciones son "una válvula de escape dentro del rígido ordenamiento de zonificación vigente en nuestra jurisdicción". *Empresas Ferrer v. A.R.Pe., supra,* págs. 266-267; *Asoc. Res. Park Side, Inc. v. J.P.,* 139 DPR 349, 354 (1995). El propósito de estas es atenuar el rigor reglamentario para así aliviar las restricciones que regulan el disfrute de determinada propiedad cuando se demuestra que, ante circunstancias especiales, la aplicación del reglamento existente es irrazonable y causa perjuicios a su propietario.

*Empresas Ferrer v. A.R.Pe., supra,* págs. 266-267; *A.R.P.E. v. J.A.C.L.,* 124 DPR 858, 861-862 (1989). De esta forma, "se evita que una reglamentación existente se convierta en un instrumento inflexible e incapaz de amoldarse a situaciones extraordinarias". *Empresas Ferrer v. A.R.Pe., supra,* pág. 267; *T-Jac, Inc. v. Caguas Centrum Limited,* 148 DPR 70, 82 (1999).

**D.**

Como es conocido, las servidumbres en equidad son aquellas "restricciones y condiciones que limitan el uso de terrenos, que operan a beneficio de los presentes y futuros propietarios, mediante las cuales se imponen cargas o gravámenes especiales como parte de un plan general para el desarrollo y la preservación de una urbanización residencial". *Residentes Parkville v. Díaz,* 159 DPR 374, 382-383 (2003). Las mismas deben ser razonable para su validez y eficacia, y "que se establezcan como parte de un plan general de mejoras, que consten de forma específica en el título de la propiedad y que se inscriban en el Registro de la Propiedad". *Íd.,* pág. 383. Una vez inscritas, estas restricciones constituyen derechos reales oponibles *erga omnes. Rodríguez et al. v. Gómez et al.,* 156 DPR 307, 312 (2002). Específicamente, las servidumbre en equidad constituyen un contrato entre las partes, "ya sea porque éstas acuerdan gravar sus propiedades para delimitar su uso o el tipo de edificación que se puede efectuar sobre éstas, o porque adquirentes posteriores de la propiedad gravada, conociendo las restricciones inscritas en el Registro de la Propiedad, aceptan someterse a ellas". *Residentes Parkville v. Díaz, supra,* pág. 384. En otras palabras, las cláusulas restrictivas de servidumbre en equidad ganan rango de contratos privados de naturaleza real. *Íd.,* pág. 384.

Tan pronto se reconozca la validez y vigencia de estas cláusulas, "los tribunales deben hacer cumplir a cabalidad la voluntad de las partes, que se refleja en las cláusulas restrictivas de

una servidumbre en equidad válida y vigente, salvo que sea contraria a la ley, a la moral o al orden público". *Íd.*, pág. 386. Sin embargo, bajo nuestro ordenamiento jurídico, no existe estatuto o reglamento que le conceda la autoridad a los entes administrativos para adjudicar los derechos de las partes según surgen de las restricciones. *Íd.*, pág. 392; *Luan Investment Corp. v. Román*, 125 DPR 533, 551 (1990). De este modo, "una servidumbre en equidad retiene toda su vigencia, a pesar de que una agencia administrativa conceda un permiso de uso contrario a ese gravamen". *Residentes Parkville v. Díaz, supra*, pág. 392; *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 557 (2002).

## III.

En el caso de marras nos corresponde determinar si la parte proponente tuvo legitimación activa para presentar la consulta de construcción en cuestión; si el trámite de la consulta de construcción contravino las condiciones restrictivas de la urbanización donde estaba localizada la propiedad perteneciente a la parte proponente; y si la OGPe actuó arbitraria y caprichosamente al emitir la determinación recurrida.

A juicio de la OGPe, la consulta de la señora Bergollo Huertas proponía legalizar una construcción en su propiedad que presentaba variaciones en los parámetros de construcción para el patio lateral izquierdo y posterior, al igual que en cuanto a una verja en el patio. La agencia administrativa resolvió que, de las determinaciones de hechos y los documentos presentados, se desprendía justificación que ameritaba que la Junta Adjudicativa concediese la modificación solicitada. Ante tales circunstancias, la Junta Adjudicativa emitió una determinación favorable para la solicitud en cuestión.

Insatisfecha, la parte recurrente arguyó ante nos que la parte proponente careció de legitimación activa para solicitar la consulta

de construcción de epígrafe por no haber sido el titular del terreno sobre el cual se construyó el proyecto. Sostuvo además que la edificación se realizó en contravención con las condiciones restrictivas de la urbanización, y que la determinación de la agencia administrativa no estaba apoyada por prueba.

Por su parte, la parte proponente arguyó que ostentaba legitimación activa, pues, aunque la construcción se extralimitaba, iba a eliminar la zapata de la verja y a realizar un rediseño del muro para que no hubiese invasión de terreno. También indicó que las escrituras de las condiciones restrictivas no fueron inscritas y tampoco prohibían el trámite en cuestión. Por último, indicó que la determinación recurrida estuvo basada en la totalidad del expediente administrativo.

Tras un análisis objetivo y cuidadoso, resolvemos que la OGPe no incurrió en los señalamientos de error.

Como pormenorizamos anteriormente, "[t]oda variación deberá ser solicitada por escrito por el dueño o un representante autorizado del dueño de la propiedad para la cual solicita la misma; señalando los motivos, fundamentos y razones en apoyo de su solicitud". Sección 6.3.2.2 del Reglamento Conjunto 2020, *supra*, pág. 475. **De igual modo, la solicitud de consulta, "será promovida por el dueño, optante o arrendatario de la propiedad con autorización, por sí o a través de su representante autorizado por el Jefe de la Agencia o su representante autorizado en caso de un proyecto público".** Sección 2.1.9.5 del Reglamento Conjunto 2020, *supra*, pág. 28. (Énfasis suplido). Para ello, se tendrá que incluir prueba fehaciente que establezca legitimación activa de que el proponente es el dueño, optante o arrendatario debidamente autorizado por el dueño de la propiedad, mediante copia de los siguientes documentos: (1) escritura pública; (2) contrato de arrendatario; (3) contrato de opción de compra; (4)

certificación registral; (5) declaración de herederos; (6) transacción de terrenos debidamente aprobada por la JP; y (7) de tratarse de una persona jurídica, una documentación que acredite su existencia y autorización para hacer negocios en Puerto Rico o Estados Unidos. *Íd.*

En el presente caso, la parte proponente demostró que cumplió con el requisito inicial de su titularidad sobre el predio mediante la presentación de una escritura pública sobre compraventa y hogar seguro.[17] Por lo tanto, la parte proponente ostentaba legitimación activa para presentar la consulta de construcción, a tenor con la Ley Núm. 161-2009, *supra,* con el propósito de legalizar una ampliación de su propiedad.

Por otro lado, según explicado en la sección anterior, cuando se reconozca la validez y vigencia de las cláusulas restrictivas de servidumbre en equidad, "los tribunales deben hacer cumplir a cabalidad la voluntad de las partes, que se refleja en las cláusulas restrictivas de una servidumbre en equidad válida y vigente, salvo que sea contraria a la ley, a la moral o al orden público". *Residentes Parkville v. Díaz, supra,* pág. 386. **No obstante, bajo nuestro ordenamiento jurídico, no existe estatuto o reglamento que le conceda la autoridad a los entes administrativos para adjudicar los derechos de las partes según surgen de las restricciones**. *Íd.,* pág. 392; *Luan Investment Corp. v. Román, supra,* pág. 551. De este modo, "una servidumbre en equidad retiene toda su vigencia, a pesar de que una agencia administrativa conceda un permiso de uso contrario a ese gravamen". *Residentes Parkville v. Díaz, supra,* pág. 592; *Asoc. Vec. Urb. Huyke v. Bco. Santander, supra,* pág. 557. Por lo tanto, la determinación favorable de la consulta de construcción de epígrafe es <u>independiente</u> al pleito judicial corriente en el caso

---

[17] *Íd.*, Anejo III, pág. 29.

AR2022CV01123.[18] En otras palabras, la OGPe no incidió en el error planteado, pues no le correspondía dirimir la validez de las servidumbres en equidad y adjudicar los derechos de las partes que surgieran de las cláusulas restrictivas. Simplemente, debía determinar si acogía y atendía la solicitud o la rechazaba de plano. Sección 11.1.2.6 del Reglamento Conjunto 2020, *supra*, págs. 735-736.

Por último, la parte recurrente sostuvo que el ente administrativo actuó arbitraria y caprichosamente al emitir la determinación recurrida sin basarse en hechos relevantes, evidencia suficiente, y en un expediente completo. Sin embargo, la parte recurrente no presentó transcripción de prueba oral ni solicitó permiso para elevar los autos, por lo que no nos puso en posición para atender esta controversia.

A la luz de los anterior, la OGPe no incurrió en los errores señalados y procede concederle deferencia.

**IV.**

Por las razones discutidas anteriormente, confirmamos la *Resolución sobre Consulta de Construcción* recurrida.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[18] *Íd.*, Anejo X, págs. 105-119.