Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| PASEOS DE DORADO PROPERTY OWNERS ASSOCIATION, INC.<br><br>Peticionaria<br><br>Vs.<br><br>THE DAWN HOTEL AT DORADO, LLC; QB GROUP LLC; PASEO SAN ANTONIO, INC. Demandado-Recurrida<br><br>DAVID EFRON; OFICINA DE GERENCIA DE PERMISOS DEL DEPARTAMENTO DE DESARROLLO ECONOMICO Y COMERCIO; MUNICIPIO DE DORADO Demandados | TA2025CE00652 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2025CV03889<br><br>Sobre: Injuction Estatutario Injuction Preliminar Injuction Permanente Sentencia declaratoria; Cumplimiento especifico |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a  12  de noviembre de 2025.

Comparece la parte peticionaria, Paseos de Dorado Property Owner's Association, Inc., (en adelante Asociación) mediante un recurso de *Certiorari* radicado el 21 de octubre de 2025, y nos solicita que revisemos la *Resolución* del 16 de octubre de 2025 que declara No Ha Lugar la *Urgente Solicitud de Injunction Preliminar Sin Vista y Sin Fianza* instada por los peticionarios el 29 de septiembre de 2025.

**I.**

La Asociación presentó el 23 de julio de 2025 una Demanda de Injuction Estatutario al amparo del Artículo 14.1 de la Ley 161

del 2009, una Solicitud de Injuction Preliminar y Permanente, y Sentencia Declaratoria. En esencia, la parte peticionaria arguyó que la finca #17,547 perteneciente al codemandado The Dawn Hotel al Dorado, LLC (en adelante Dawn Hotel) y la finca #13,041 perteneciente a Paseo San Antonio, Inc., (en adelante Paseo San Antonio) están gravadas por una servidumbre de equidad que fue constituida mediante la Escritura número 12 del 28 de diciembre de 1995, que limita el desarrollo de dichos predios a un proyecto residencial. Alega que, los recurridos Dawn Hotel y Paseo San Antonio, en violación a las condiciones restrictivas llevaron a cabo un proceso de consulta de ubicación, obtención de permisos de construcción y solicitudes de endoso de un hotel ante la OGPe y el Municipio de Dorado sin haber divulgado las condiciones restrictivas que gravan dichos predios.

La Asociación alegó, además, que luego de la radicación de un pleito en el caso BY2025CV01802, el codemandado Dawn Hotel y Paseo San Antonio otorgaron de forma *ultra vires* una Escritura de Liberación, donde el desarrollador original de Paseos de Dorado, el codemandado David Efrón, dejó sin efecto las condiciones restrictivas de la finca #17,547, la Finca #13,041 y otras dos (2) fincas. Adujo, que la Escritura de Liberación fue un acto ilegal, ya que requiere, entre otras cosas, el consentimiento de los miembros de la Asociación, del dueño del *neighboring property*, el dueño del predio no desarrollado y solamente se pueden liberar por acuerdo luego de transcurrido treinta (30) años desde la constitución de la servidumbre; lo que tampoco ha sucedido. Planteó que la Asociación está sujeta a sufrir un daño irreparable de continuar la parte demandada con el desarrollo de un proyecto hotelero en la finca #17,547, por lo que solicitan un injunction estatutario bajo las disposiciones del Artículo 14.1 de la Ley 161-2009, para revocar la

consulta de ubicación, permisos de construcción y endosos otorgados por la OPGPe y el Municipio de Dorado.

Además, solicitan la concesión de un *injunction* preliminar bajo la Regla 57.2 de Procedimiento Civil para detener el desarrollo. También solicitaron el cumplimiento específico de las condiciones restrictivas, o en la alternativa, un *injunction* permanente toda vez que las condiciones restrictivas de servidumbre en equidad constan en escritura pública por lo que arguyen que no es necesaria la imposición de una fianza conforme la regla 56.3 de Procedimiento Civil.. Por otro lado, la Asociación solicitó una Sentencia Declaratoria para establecer la nulidad de la Escritura de Liberación y la Consulta de Ubicación, permisos de construcción y endosos por no cumplir con las leyes y reglamentos aplicables, así como disponer que la Asociación tiene un derecho real sobre las estructuras de acceso en la Avenida Principal Norte.

El 24 de julio de 2025, el TPI emitió una *Resolución y Orden* a la Asociación para que sometiera los documentos que acreditaban que las condiciones restrictivas fueron debidamente constituidas y la legitimación de la Asociación para comparecer en representación de sus miembros. Mantuvo en suspenso el señalamiento para la vista de *injunction* hasta que se cumpliera con la orden de someter la documentación solicitada, so pena de desestimación. En específico solicitó; Certificación Registral Karibe de las Finca Núm. 1,532 del Registro de la Propiedad de Bayamón, Sección II., Certificación Registral Karibe de la Finca Núm. 13,041 del Registro de la Propiedad de Bayamón, Sección II, Certificación Registral Karibe de la Finca Núm. 17,547 del Registro de la Propiedad de Bayamón, Sección II., Certificación Registral Karibe de la Finca Núm. 17,607 del Registro de la Propiedad de Bayamón, Sección II., Certificación Registral Karibe de la Finca Núm. 17,683 del Registro de la Propiedad de Bayamón, Sección II, Convocatoria de reuniones,

quorum, votaciones, minutas y autorización de la Asociación a tomar medidas legales o demandar, para oponerse a la violación de las condiciones restrictivas de Paseo del Sol, Paseo Corales 1, Paseo Corales 2 y Paseo las Olas, Reglamentos vigentes de Paseo del Sol, Paseo Corales 1, Paseo Corales 2 y Paseo las Olas.

El 30 de julio de 2025, la Asociación presentó la primera demanda enmendada a los únicos efectos de establecer la facultad de la Asociación para instar la acción de epígrafe. Asimismo, presentó una *Solicitud de Reconsideración de la Resolución y Orden, y una Urgente Solicitud de Señalamiento de Vista de Injunction Estatutario Preliminar.*

El TPI señaló una vista de injunction preliminar para el 14 de agosto de 2025. No obstante, la misma fue reseñalada para las fechas tentativas del 15 de septiembre de 2025, 6 de octubre o el 14 de octubre de 2025 por entender el foro primario que era necesario emplazar por edicto al codemandado David Efrón.

Los codemandados The Dawn Hotel y Paseo San Antonio radicaron el 14 de agosto de 2025 una *Oposición a la Solicitud de Injunction Preliminar.* La parte demandada adujo que no procede el injunction preliminar cuando la finca #17,547 fue liberada expresamente mediante escritura pública de las condiciones restrictivas que la Asociación invoca en su demanda; dicha finca ubica fuera de Paseos de Dorado; no colinda con Paseos de Dorado y no fue parte de la proyección del desarrollo de Paseos de Dorado. Además, alega que tiene todos los permisos debidamente expedidos por las entidades gubernamentales correspondientes. Adujo que cuenta con la prueba documental que acredita fehacientemente que las condiciones restrictivas invocadas por la Asociación no son oponibles a la finca objeto de controversia y que la construcción del hotel es cónsono y compatible con la comunicades aledañas, incluyendo Paseos de Dorado. Arguyó que, conforme a las

disposiciones de la propia Escritura número doce (12) sobre Constitución de Condiciones Restrictivas de Paseos de Dorado, el desarrollador y dueño original libero la parcela de las referidas condiciones restrictivas. Adujo que la escritura de constitución de condiciones restrictivas le confería la facultad al desarrollador, sin el consentimiento de la Asociación u otra persona, de liberar los predios de las condiciones restrictivas. Además, que dicha liberación se realizó bajo los preceptos de razonabilidad y normas aplicables a las condiciones restrictivas. Afirmó que la parte demandante no tiene probabilidad de prevalecer en los méritos de la reclamación y que la Escritura de Liberación goza de una presunción de corrección que no permite atender el planteamiento de nulidad hasta que se emplazara al codemandado David Efrón.

En esa misma fecha, la Asociación presentó *Segunda Demanda Enmendada,* para incluir a la Oficina de Gerencia de Permisos como parte demandada.

El 29 de agosto de 2025, el codemandado David Efrón compareció mediante una *Moción Informativa* e indicó que tenía disponible el 14 de octubre de 2025 para la vista de injunction, y a esos efectos, se emitió una Orden calendarizando la vista.

Sin embargo, el 29 de septiembre de 2025 la Asociación presentó una *Urgente solicitud de Injunction preliminar sin vista y sin fianza.* Dicha solicitud constituyó la tercera solicitud de la Asociación para que el foro primario emitiera un injunction preliminar sin la celebración de una vista. La Asociación adujo que, según lo establecido por nuestro Tribunal Supremo en *Ramírez Kurtz v. Damiani Ramos*, 214 DPR 986 (2024) y la Regla 56.5 de Procedimiento Civil, procedía la expedición de un injunction preliminar sin vista cuando el promovente demuestra, mediante declaración jurada, la existencia de: (i) riesgo de sufrir perjuicio o daño irreparable, (ii) circunstancias extraordinarias, y (iii)

probabilidad de prevalecer en los méritos mediante prueba documental fehaciente. En apoyo a la solicitud, la Asociación sometió la declaración jurada de la Presidenta de la Asociación y un Memorando.

Según la declaración jurada, la Presidenta de la Asociación, Migdalia Santiago Díaz, acredita la urgencia y gravedad de la situación, ya que la construcción del hotel por parte Dawn Hotel se ha acelerado significativamente, incluyendo la creación de una tercera entrada que ubica cerca a los muros de Paseo Las Palmas y Paseo del Mar, y la edificación de muros de concreto que alega no corresponden a los planos previamente divulgados. Según la Asociación, estas obras presionan directamente a la comunidad, ya que forzarían el desplazamiento de la caseta de seguridad ubicada en la Avenida Principal Norte, y de no moverse, la entrada del hotel quedaría dentro de la urbanización, alterando su diseño y seguridad. Asimismo, mencionó que la Asociación había recibido una carta de los representantes legales de Dawn Hotel y Paseo San Antonio, que reflejaba que David Efrón alegaba tener un supuesto derecho de liberar unilateralmente la rotonda central de la Urbanización de Paseos de Dorado de la servidumbre en equidad, lo que amenazaba con alterar aún más gravemente el plan original de desarrollo residencial. Puntualizo en su declaración que, al momento de adquirir su propiedad, ella y sus vecinos le representaron contractualmente que los predios gravados por la servidumbre en equidad solamente podrían ser desarrollados como proyectos residenciales. Reitero que el desarrollo de un proyecto comercial dentro de la urbanización afectaría su calidad de vida y la de sus vecinos.

Por su parte, la Asociación presentó un *Memorando en Apoyo a "Urgente Solicitud De Injunction Preliminar Sin Vista y Sin Fianza" presentada en la entrada # 102 y Réplica a "Oposición a la Solicitud*

*de Injunction Preliminar"* presentada en la Entrada # 60, mediante el cual reitera los planteamientos esbozados en los escritos anteriores sobre la procedencia del injunction preliminar.

El 1 de octubre de 2025, los codemandados Dawn Hotel y Paseo San Antonio radicaron una *Breve Réplica A "Urgente Solicitud De Injunction Preliminar Sin Vista Y Sin Fianza" (Sumac Núm. 102),* en la cual arguyen que el escrito instado por la Asociación el 29 de septiembre de 2025 constituye una reconsideración tardía de lo resuelto por el TPI en la vista del 14 de agosto de 2025. Expuso que, en la referida vista, la Asociación argumentó la procedencia del injunction preliminar sin fianza y vista conforme lo resuelto por el Tribunal Supremo en el caso de *Ramírez Kurtz v. Damiani Ramos, supra.* No obstante, refutó dicho planteamiento con la prueba documental fehaciente que ostenta la parte demandada que evidencia que no son oponibles las condiciones restrictivas a las fincas de los demandados y que el desarrollo del hotel es totalmente cónsono y compatible con la comunidad del área, incluyendo Paseos de Dorado. Particularmente, se indica que la Escritura Núm. 3 de Liberación de Condiciones Restrictivas, inscrita en el Registro de la Propiedad, que goza de la fe pública registral, liberó la parcela 17,547 de toda condición restrictiva.

Por su parte, el 3 de octubre de 2025, la Asociación instó un escrito titulado *Vehemente Dúplica de la Asociación a "Breve Réplica a "Urgente Solicitud de Injunction preliminar sin vista y sin fianza" (Sumac Núm. 102)" y Moción Reiterando "Urgente Solicitud De Injunction Preliminar Sin Vista Y Sin Fianza".* El 13 de octubre de 2025, la Asociación presentó *Urgente Solicitud De Determinación Final Sobre Solicitud De Injunction Preliminar Bajo La Segunda Causa De Acción,* solicitándole al TPI que emitiera el Injunction preliminar sin vista y sin fianza, aun cuando la vista de injunction estaba pautada para el día siguiente, 14 de octubre de 2025.

En la vista del 14 de octubre de 2025, el TPI realizó un resumen del trámite procesal del caso; de las mociones resueltas y las pendientes de resolver. La parte demandada informó sobre unas incidencias que estaban aconteciendo extrajudicialmente y que entendía podían afectar la solicitud de injunction preliminar. La parte demandante solicitó la celebración de la vista, o en su defecto, que se emitiera el injunction sin vista. No obstante, el foro primario resolvió que no emitiría un injunction sin la celebración de una vista y reseñaló la vista para el 28 de octubre de 2025.

Posteriormente, el 16 de octubre de 2025 el TPI emitió una Resolución declarando No Ha Lugar la *Urgente Solicitud de Injunction Preliminar sin Vista y Sin fianza* (entrada 102) presentada por la Asociación. Estableció que, según la prueba documental de las partes, existen permisos de construcción otorgados para el proyecto hotelero que gozan de una presunción de legalidad rebatible y una escritura pública de liberación de condiciones restrictivas sobre las dos parcelas en controversia. Asimismo, estableció que no había, en esos momentos, evidencia de un daño irreparable.

Inconforme con la determinación, la Asociación radicó el 21 de octubre de 2025 un recurso de *Certiorari* ante este foro y planteó los siguientes errores:

PRIMER ERROR: ERRÓ EL TPI AL FUNDAMENTAR SU DETERMINACIÓN DE QUE LA SERVIDUMBRE EN EQUIDAD NO APLICABA A LA FINCA # 17,547 A BASE DE UN PERMISO DE CONSTRUCCIÓN QUE ADVIRTIÓ COR[R]ECTAMENTE QUE NO TIENE EL EFECTO DE ANULAR LAS CONDICIONES RESTRICTIVAS.

SEGUNDO ERROR: ERRÓ EL TPI AL NO DETERMINAR COMO CUESTIÓN DE DERECHO QUE LA ESCRITURA DE LIBERACIÓN ES NULA AB INITIO PORQUE DAVID EFRON NO TIENE AUTORIDAD UNILATERAL PARA LIBERAR TERRENOS DE LA SERVIDUMBRE EN EQUIDAD QUE NI SIQUIERA SON DE SU TITULARIDAD.

TERCE[R] ERROR: ERRÓ EL TPI AL DETERMINAR QUE LA FINCA # 17,547 DONDE SE ESTÁ CONSTRUYENDO EL DESARROLLO COMERCIAL-HOTELERO NO ESTÁ SUJETA A LA SERVIDUMBRE EN EQUIDAD.

CUARTO ERRO[R]: ERRÓ EL TPI AL DENEGAR EL INJUNCTION PRELIMINAR SIN VISTA Y SIN FIANZA CONFORME DECIDIDO EN RAMIREZ KURTZ, YA QUE SE CUMPLE CON LOS 3 CRITERIOS INDEPENDIENTES DE LA REGLA 56.5 DE PROCEDIMIENTO CIVIL Y EL CRITERIO DE LA 56.3(A).

El 31 de octubre de octubre de 2025, la parte recurrida, Dawn Hotel y Paseo San Antonio presentaron su *Oposición a la Expedición del Auto de Certiorari.* Con el beneficio de los escritos, procedemos a disponer.

**II.**

A. Certiorari

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López,* 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López, supra,* pág. 337; *Rivera et al. v. Arcos Dorados et al., supra,* pág. 209; *IG Builders et. al. v. BBVAPR,* 185 DPR 307, 338 (2012). Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo* v. *Rivera Montalvo,* 205 DPR 352, 373 (2020); *Negrón* v. *Srio. de Justicia,* 154 DPR 79, 91 (2001). Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo, supra,* pág. 372 (citando a *Negrón v. Srio. De Justicia, supra; Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728-729 (2016)).

Por otra parte, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, dispone que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el foro primario, solamente será expedido por este Tribunal cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil o de la denegatoria de una moción de carácter dispositivo. Ahora bien, por excepción este foro apelativo podrá revisar órdenes o resoluciones interlocutorias dictadas por el TPI cuando se recurra de: (1) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (2) asuntos relativos a privilegios evidenciarios; (3) anotaciones de rebeldía; (4) casos de relaciones de familia; (5) casos que revistan interés público; (6) o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. En los casos antes mencionados, el foro apelativo no tiene que fundamentar su decisión al denegar la expedición de un recurso de *certiorari.*

Asimismo, con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari.* En lo pertinente, la Regla 40 dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 esc. 15 (2005) (citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560). Por lo general, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo que "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo". *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 155 (2000) (citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986)). En tal sentido, al optar por no expedir el auto solicitado, no se está emitiendo una determinación sobre los méritos del asunto o cuestión planteada, por lo que esta puede ser presentada nuevamente a través del correspondiente

recurso de apelación. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

B. Restricciones voluntarias sobre fincas

Las servidumbres en equidad ahora llamadas restricciones voluntarias sobre fincas fueron incorporadas en el ordenamiento jurídico de Puerto Rico en *Glines v. Matta*, 19 DPR 409 (1913). No obstante, en ausencia de una normativa codificada en el Código Civil de 1930 el desarrollo de esta figura se ha desarrollado hasta la aprobación del nuevo Código Civil de 2020 de expresiones doctrinales y jurisprudenciales. El nuevo Código Civil de 2020 incorpora la normativa reconociendo el papel decisivo en el desarrollo de comunidades urbanas con un alto grado de orden, racionalidad y estética. En fin, el Código Civil de 2020 regula las restricciones voluntarias sobre fincas, antes conocidas como servidumbres en equidad. El Artículo 813 del Código Civil, 31 LPRA sec. 8081, dispone que las restricciones voluntarias de carácter real son aquellas limitaciones de uso, construcción, y ornato o fines análogos que se imponen a las fincas. Para que las restricciones voluntarias sobre predios sean válidas y eficaces contra todos deben ser: (a) ser razonables; (b) obedecer a un plan general de mejoras; (c) ser compatibles con la política pública sobre uso de terrenos; (d) constar de manera específica en un instrumento público; y (e) estar inscritas en el Registro de la Propiedad. Artículo 814, 31 LPRA sec. 8082.

Por su parte, el Artículo 815 del Código Civil, 31 LPRA sec. 8083 nos indica que las restricciones voluntarias podrán constituirse por negocio jurídico bilateral o multilateral celebrado por todos los propietarios de las fincas afectadas; o por negocio jurídico del propietario de la finca afectada. Las restricciones voluntarias son indivisibles. Si la finca afectada se divide en dos o

más fincas, la restricción no se modifica y cada una de ellas también queda afectada. Art. 816 del Código Civil, 31 LPRA sec. 8084.[1]

Como anticipamos el Tribunal Supremo de Puerto Rico reconoció por primera vez la figura de las restricciones voluntarias sobre fincas en año 1913. Véase *Glines et al. v. Matta et al.*, supra. El Tribunal Supremo había señalado que las condiciones restrictivas se constituyen unilateralmente por el urbanizador para limitar las facultades de los futuros adquirentes con respecto al uso destinado y las edificaciones permisibles dentro de la finca gravada. *Rodríguez et al. v. Gómez et al.*, 156 DPR 307, 312 (2002). Asimismo, se había establecido que para asegurar la validez y eficacia de las restricciones voluntarias sobre fincas era necesario que estas se establezcan como parte de un plan general de mejoras, consten de forma específica en el título de la finca y que sean inscritas en el Registro de la Propiedad. *Residentes Parkville v. Díaz,* 159 DPR 374, 384-385 (2003). Establecidos estos requisitos, las servidumbres pasan a ser derechos reales con eficacia *erga omnes. Rodríguez et al. v. Gómez et al., supra*, pág. 312. El propietario o el titular de un derecho real que recae sobre una finca gravada con restricciones voluntarias puede presentar un interdicto en el tribunal para impedir que se violen y obtener indemnización por los daños sufridos. Artículo 817, 31 LPRA sec. 8085.[2] La jurisprudencia ha reconocido legitimación activa a todo propietario de un propietario sujeto a condiciones restrictivas debidamente inscritas para hacer valer sus derechos e impedir violaciones a las limitaciones impuestas mediante injunction.

El Tribunal Supremo de Puerto Rico ha expresado que, en términos jurídicos, la servidumbre en equidad, "se considera un contrato entre las partes, ya sea porque éstas acuerdan gravar sus

---

[1] Antes Artículo 470 Código Civil 1930, 31 LPRA sec. 1636.
[2] Antes Artículo 319 del Código Civil de 1930, 31 LPRA sec. 1211.

propiedades para delimitar su uso o el tipo de edificación que se puede efectuar sobre éstas, o porque adquirentes posteriores de la propiedad gravada, conociendo las restricciones inscritas en el Registro de la Propiedad, aceptan someterse a éstas". *Residentes Parkville v. Díaz*, supra. Por ello, lo importante para determinar el significado y el alcance de las condiciones restrictivas de una servidumbre en equidad es conocer la voluntad real de las partes al momento de constituirse las restricciones; qué fin se perseguía al gravar las propiedades. *Residentes Parkville v. Diaz, supra,* pág. 385 citando a *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 540 (2002); *Rodríguez et als. v. Gómez et al., res. el,* 156 DPR 307, 314 (2002).

Ahora bien, el Código Civil 2020 establece en su Artículo 818 que las restricciones voluntarias pueden modificarse o extinguirse de la siguiente manera: (a) en la forma y por las causas dispuestas en el acto jurídico que las establece; (b) por acuerdo unánime de los interesados, ya sea mediante la eliminación total o parcial de las restricciones o mediante la constitución de nuevas restricciones que alteran las anteriores; (c) por efecto del tiempo o por realizarse la condición, si así se constituyeron; (d) por renuncia o abandono de los propietarios que reciben los beneficios de las restricciones mediante conducta que demuestre una intención de renunciar a ellos o abandonarlos; (e) por expropiación forzosa, si las restricciones son incompatibles con el uso público de la finca expropiada; y (f) por cambios radicales del vecindario. 31 LPRA sec. 8086.

C. El interdicto para vindicar las condiciones restrictivas

La jurisprudencia ha reconocido legitimación activa a todo propietario de un predio sujeto a condiciones restrictivas debidamente inscritas para hacer efectivos sus derechos e impedir violaciones a las limitaciones impuestas mediante el interdicto

(injunction). *Residentes Parkville v. Díaz,* supra.  El Código Civil 2020 reitera la legitimación activa al propietario o el titular de un derecho real a presentar en el tribunal un interdicto para impedir que se violen las condiciones restrictivas. Artículo 817, *supra.* Igualmente, el Tribunal Supremo de Puerto Rico ha reconocido el injunction como el mecanismo apropiado para que el dueño de un predio pueda hacer valer sus derechos o impedir la violación de las condiciones restrictivas. En una acción de interdicto, la parte promovente tiene que demostrar la validez y vigencia de las cláusulas restrictivas.  tiene que demostrar la validez y vigencia de las cláusulas restrictivas. Es decir que; las servidumbres son razonables; fueron establecidas como parte de un plan general de mejoras; constan de forma específica en el título de la propiedad, y están inscritas en el Registro de la Propiedad". *Ramírez Kurtz v. Damiani Ramos,* 214 DPR 986, 997 (2024); *Glines et al v. Matta et al, supra.*

Ante una solicitud de injunction, los tribunales luego de considerar si se cumplen los requisitos antes consignados y que la servidumbre fue válidamente constituida debe dar paso a un segundo cotejo conforme los criterios establecidos en *Asoc. Vec. Caparra v. Asoc. Fom. Educ.,* 173 DPR 304, 324-325 (2008).  Es decir, superado el primer cotejo entonces el foro judicial deberá considerar (1) la naturaleza de los daños que pueden ocasionárseles a las partes; (2) la probabilidad de que la parte promovente prevalezca en los méritos; (3) la probabilidad que la causa se torne académica; (4) el posible impacto sobre el interés público; (5) examinar el tiempo que tardó el peticionario en presentar su reclamo y (6) el efecto del tiempo en los intereses de las partes según la justicia social. *Ramírez Kurtz v. Damiani Ramos,* supra, citando a *Asoc. Vec. Caparra v. Asoc. Fom. Educ.,* supra.

Ahora bien, y por su pertinencia con los hechos que nos ocupan precisa aclarar que en *Ramirez Kurtz v. Damiani Ramos*, si bien el máximo foro local reconoció la normativa sobre la evaluación de los injunctions expresamente reconoció que para vindicar una condición restrictiva, el promovente deberá presentar una acción bajo la Regla 56.5 de Procedimiento Civil, 32 LPRA, Ap. V, pues una concesión de este remedio puede limitar de manera provisional el derecho a la libre disposición de los bienes de la parte que resulta afectada por la orden de hacer o desistir de hacer. *Ramírez Kurtz v. Damiani Ramos, supra*, pág. 999. En estos casos, el promovente no tiene que demostrar la existencia o inmediatez de un daño irreparable ni la ausencia de un remedio en ley. Basta con demostrar la violación de la servidumbre para que se justifique la concesión del injunction. *Id.* Como regla general, no procede la concesión del remedio interdictal sin que se haya cumplido con la Regla 56.2 de Procedimiento Civil de notificación a la parte adversa y la celebración de una vista, excepto cuando la parte provente demuestre la probabilidad de prevalecer mediante prueba documental fehaciente. *Id.*, págs. 999-1000.

### III.

De los señalamientos de error y el expediente ante nuestra consideración, este Tribunal limita su análisis al cuarto error, relacionado con la denegatoria del injunction preliminar sin vista y sin fianza. En esta etapa de los procedimientos corresponde que los demás errores planteados por la parte peticionaria sean atendidos por el foro primario una vez se celebre la vista correspondiente sobre el injunction permanente. Esto, debido a que los demás errores planteados por el peticionario no se han resuelto en sus méritos. En la resolución recurrida, el foro primario se limitó a denegar la solicitud de injunction preliminar sin fianza y sin vista, únicamente considerando los documentos presentados por la parte promovente.

Examinadas las circunstancias procesales y el manejo del caso, entendemos que procede la expedición del auto de *certiorari.* De la prueba presentada por la Asociación surge la existencia de las condiciones restrictivas controversias genuinas sobre la validez y alcance de la escritura de liberación y los efectos de los permisos de construcción concedidos. En estas circunstancias, el tribunal debió ejercer su discreción con la prudencia que exige un remedio preventivo, considerando que el propósito del injunction preliminar es preservar el *status quo* y evitar que la controversia pierda su razón de ser antes de resolverse en los méritos.

Conforme a lo resuelto en *Ramírez Kurtz v. Damiani Ramos, supra,* el injunction preliminar constituye una medida cautelar destinada a mantener las cosas en su estado actual mientras se celebra la vista en su fondo. Para la concesión del injunction *preliminar* el foro primario debía considerar si las condiciones restrictivas constaban en escritura pública debidamente inscrita en el Registro de la Propiedad". No era necesario demostrar la existencia o la inmediatez del daño irreparable.

El TPI, sin embargo, fundamentó su denegatoria en la existencia de permisos de construcción y en una escritura de liberación cuya validez precisamente se impugna.[3] Al resolver de ese modo, adelantó una apreciación sobre cuestiones sustantivas que aún no han sido probadas y que corresponden dilucidarse en la vista sobre injunction permanente. Además, el foro recurrido denegó el injunction preliminar fundamentándose en la ausencia de un daño irreparable que en esta etapa de los procesos no hay que probar.

Mediante la *Resolución* recurrida el TPI denegó la solicitud de *injunction* preliminar sin vista y sin fianza, pese a que el foro primario no la atendió con la diligencia que requiere un remedio de

---

[3] Cabe resaltar que para que una persona modifique, transmita o extinga un derecho real debe ostentar legitimación activa.

naturaleza urgente, al suspender en varias ocasiones los señalamientos de vistas, incluso sin fundamentarse tales suspensiones. Tal inacción tuvo el efecto de dejar sin protección inmediata a la parte promovente y comprometer la efectividad del proceso judicial.

Por último, el remedio provisional ante nuestra consideración está predicado en la facultad inherente que tiene todo tribunal para estructurar remedios que protejan su jurisdicción y eviten un fracaso de la justicia. A nuestro entender existe prueba documental fehaciente que acredita la validez de las condiciones restrictivas. Aunque el foro guarda discreción para conceder el remedio la discreción no está sujeta al automatismo judicial sino a un análisis integral de la prueba y un ponderado balance de equidades, sopesando los intereses de las partes. Ha de quedar claro que siendo la medida que tratamos de carácter interlocutorio *provisional*, nada de lo que aquí expongamos debe entenderse como que prejuzga los méritos de la controversia entre las partes.

Por todo lo anterior, concluimos que el foro primario incidió al denegar la solicitud de injunction preliminar. En aras de salvaguardar la integridad del proceso judicial y evitar un perjuicio que podría tornarse irreparable, procede expedir el auto de *certiorari*, revocar la Resolución recurrida y ordenar la expedición de un injunction preliminar, el cual deberá permanecer vigente hasta que se celebre la vista correspondiente y se resuelva la solicitud en sus méritos, con la comparecencia de todas las partes afectadas.

**IV.**

Por los fundamentos antes expuestos, se expide el auto de certiorari y se revoca el dictamen recurrido. Se emite el injunction preliminar, ordenando la paralización de la construcción del hotel en la Finca #17,547 y la Finca #13,041, sin la imposición de fianza

y se devuelve el caso al foro primario para la celebración de la vista de injunction permanente.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Lotti Rodríguez disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL X | | |
| PASEOS DE DORADO PROPERTY OWNERS ASSOCIATION, INC.<br><br>Peticionaria<br><br>Vs.<br><br>THE DAWN HOTEL AT DORADO, LLC; QB GROUP LLC; PASEO SAN ANTONIO, INC.<br>Demandado-Recurrida<br><br>DAVID EFRON; OFICINA DE GERENCIA DE PERMISOS DEL DEPARTAMENTO DE DESARROLLO ECONOMICO Y COMERCIO; MUNICIPIO DE DORADO<br>Demandados | TA2025CE00652 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2025CV03889<br><br>Sobre:<br>Injuction Estatutario Injuction Preliminar Injuction Permanente Sentencia declaratoria; Cumplimiento específico |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez.

### VOTO DISIDENTE DE LA JUEZ LOTTI RODRÍGUEZ

El Artículo 813 de nuestro Código Civil, 31 LPRA sec. 8081, establece que las restricciones voluntarias de carácter real son aquellas limitaciones de uso, construcción, y ornato o fines análogos que se imponen a las fincas. Para que las restricciones voluntarias sobre predios sean válidas y eficaces contra todos deben ser: (a) ser razonables; (b) obedecer a un plan general de mejoras; (c) ser compatibles con la política pública sobre uso de terrenos; (d) constar de manera específica en un instrumento público; y (e) **estar inscritas en el Registro de la Propiedad**. Artículo 814, 31 LPRA sec. 8082. (Énfasis nuestro).

Por su parte, el Artículo 815 del Código Civil, 31 LPRA sec. 8083, dispone que las restricciones voluntarias podrán constituirse

por negocio jurídico bilateral o multilateral celebrado por todos los propietarios de las fincas afectadas; o por negocio jurídico del propietario de la finca afectada.

A esos efectos, el Tribunal Supremo ha expresado que las servidumbres en equidad, por constituir restricciones establecidas contractualmente, se rigen por las normas que establece el Código Civil de Puerto Rico en relación con la interpretación de los contratos, con especial atención a la voluntad e intención de las partes. *Rodríguez et al. v. Gómez et al.,* 156 DPR 307, 312 (2002); *Residentes Parkville v. Díaz*, 159 DPR 374, 384 (2003).

Ahora bien, nuestro Código Civil establece las causas o maneras en que se pueden modificar o extinguir las condiciones restrictivas voluntarias. Específicamente, dispone que se podrá modificar o extinguir una condición restrictiva **en la forma y por las causas dispuestas en el acto jurídico que las establece.** Artículo 818, 31 LPRA sec. 8086. (Énfasis nuestro).

El Tribunal Supremo ha reconocido el injunction como el mecanismo apropiado para que el dueño de un predio pueda hacer valer sus derechos o impedir la violación de las condiciones restrictivas. *Glines et al v. Matta et al,* 19 DPR 409, 416 (1913). En una acción de interdicto, la parte promovente tiene que demostrar la validez y vigencia de las cláusulas restrictivas. *Ramírez Kurtz v. Damiani Ramos*, 214 DPR 986, 997 (2024). Ante una solicitud de injunction, los tribunales deben considerar (1) la naturaleza de los daños que pueden ocasionárseles a las partes; (2) la probabilidad de que la parte promovente prevalezca en los méritos; (3) la probabilidad que la causa se torne académica; (4) el posible impacto sobre el interés público; (5) examinar el tiempo que tardó el peticionario en presentar su reclamo y (6) el efecto del tiempo en los intereses de las partes según la justicia social. *Id.*, citando a *Asoc. Vec. v. Caparra v. Asoc. Fom. Educ.,* 173 DPR 304, 324-325 (2008).

Asimismo, nuestro Tribunal Supremo ha determinado que, para vindicar una condición restrictiva, el promovente deberá presentar una acción bajo la Regla 56.5 de Procedimiento Civil, 32 LPRA, Ap. V, R. 56.5. En estos casos, el promovente no tiene que demostrar la existencia o inmediatez de un daño irreparable ni la ausencia de un remedio en ley. Solamente tiene que demostrar la violación de la servidumbre para que se justifique la concesión del injunction. *Id.*; *Ramírez Kurtz v. Damiani Ramos, supra*, pág. 999. A esos fines, la Regla 56.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 56.2, dispone que no se concederá un remedio provisional sin la notificación a la parte adversa y sin la celebración de una vista, excepto cuando la parte promovente demuestre la probabilidad de prevalecer mediante prueba documental fehaciente. *Ramírez Kurtz v. Damiani Ramos, supra*, págs. 999-1000.

Por otro lado, el Artículo 2 de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2002, establece que:

> "[e]l notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales […]."

En su función de custodio de la fe pública notarial, un notario le imparte veracidad, autenticidad y legalidad a los instrumentos públicos y notariales que autoriza. *In re Avilés, Tosado*, 157 DPR 867, 888 (2002); *In re Criado Vázquez*, 155 DPR 436, 452 (2001). Al autorizar un documento, el notario da fe pública y asegura que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero y que se trata de una transacción válida y legítima. *In re Avilés, Tosado, supra.*

Por ello, el resultado de la actuación goza de una presunción de corrección y quien la impugne, tendrá el peso de la prueba. 4

LPRA sec. 2162. Como ha indicado nuestro Tribunal Supremo, **lo característico de los instrumentos públicos es precisamente su presunción de veracidad y su fuerza probatoria.** *In re Davison Lampon,* 159 DPR 448, 458 (2003); *Delgado Rodríguez v. Rivera Siverio,* 173 DPR 150, 164 (2008)*; Monserrate v. Lopés*, 80 DPR 491, 501 (1958); *Vázquez v. Zeda*, 58 DPR 594, 599 (1941). (Énfasis nuestro). Al ser rebatible la presunción, le corresponde al promovente de la acción el peso de la prueba sobre los elementos de la alegada nulidad de la escritura pública.

En los casos de naturaleza civil, como el presente, las presunciones operan de manera obligatoria, por lo que su efecto no se limita a afectar la carga de presentar o producir evidencia, sino que también afecta la obligación de persuadir. Véase, Regla 302 de las de Evidencia, 32 LPRA Ap. VI, R. 302. Véase, Ernesto L. Chiesa, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales*, Tomo II, Publicaciones JTS, 2005, pág.1004.

Según la prueba documental en el caso de autos, para el 28 de diciembre de 1995, el Sr. David Efrón, como dueño y desarrollador de la parcela de terreno número 1,532 radicada en los Barrios Pueblo e Higuillar de Dorado, otorgó la escritura número doce (12) sobre Declaration of Protective Covenants and Restrictions on Construction for Paseo de Dorado. Se desprende de la referida escritura que el propósito era desarrollar un complejo de viviendas conocidos como Paseos de Dorado y que la intención del otorgante era que los proyectos que se desarrollaran en dichas áreas fueran compatibles con la comunidad y su valor estético.

En virtud del Artículo III de la escritura se establecieron unas condiciones restrictivas sobre uso que fueron inscritas en el Registro de la Propiedad en la finca principal 1,532 de Dorado. Asimismo, la referida escritura número doce (12), establece en su Artículo X y XI

las formas y maneras de modificar o liberar la propiedad de las condiciones restrictivas.

Posteriormente, las fincas 17,547 y 13,014 fueron segregadas de la finca principal por lo cual arrastraban, por su procedencia, todas las cargas de la finca matriz, entre las cuales se encontraban las condiciones restrictivas. Surge de la prueba documental, que la finca 17,547 fue segregada de la finca principal 1,532 mediante la escritura número dieciocho (18) del 3 de septiembre de 2024. Allí, se hizo constar que dicha parcela por su procedencia estaba afectada por una servidumbre y condiciones restrictivas.

No obstante, el 21 de abril de 2025, el Sr. David Efrón, como desarrollador original y dueño original que constituyó las condiciones restrictivas, otorgó la escritura de Liberación de Condiciones Restrictiva número tres (3) ante el Notario Winston Vidal Gambaro. Mediante dicha escritura, el Sr. Efrón liberó las fincas 17,547, 13,041, 17607 y 17683, que son remanentes no desarrollados de la finca principal, de las condiciones restrictivas impuestas por éste mediante la escritura número doce (12). La Escritura de Liberación fue presentada en el Registro de la Propiedad e inscrita en la finca 17,547 y la finca 13,041; quedando estas liberadas de las condiciones restrictivas que procedían de la finca principal 1,532 de Dorado.

Para la concesión de un injunction preliminar sin vista y fianza, la Asociación tenía que demostrar con prueba documental fehaciente la existencia de las condiciones restrictivas que gravaran la finca. Uno de los elementos para la validez de la constitución de una condición restrictiva es la inscripción en el Registro de la Propiedad. Según consta de las certificaciones registrales, al momento de la presentación de la solicitud de injunction preliminar no hay condiciones restrictivas constituidas que graven la finca

17543 y la finca 13041, ya que estas fueron liberadas por la escritura de Liberación número tres (3) del 21 de abril de 2025.

Es decir, en estos momentos, no existen condiciones restrictivas sobre las parcelas en controversia y sobre las cuales se solicita un injunction preliminar. Ante ello, la parte promovente no cumplió con los requisitos dispuesto por nuestro Tribunal Supremo en *Ramírez Kurtz v. Damiani Ramos, supra,* para que el foro primario emitiera un injunction preliminar sin vista previa. Entendemos que el foro primario aplicó correctamente la presunción de validez que tiene la Escritura de Liberación al denegar el injunction preliminar sin vista y que procede la celebración de una vista evidencia para que la parte demandante pase prueba sobre la alegada nulidad de dicha escritura y la vigencia de las condiciones restrictivas.

Ante esa realidad, opinamos que no procede la concesión de un injunction preliminar sin fianza y sin vista, y procede que el foro primario sin dilación alguna celebre la vista sobre injunction preliminar.

Por otro lado, coincidimos con la mayoría sobre que no procede discutir los primeros tres (3) señalamientos de error presentados por la parte peticionaria toda vez que no sean atendidos en sus méritos por el foro primario.

En San Juan, Puerto Rico a 12 de noviembre de 2025.


Glorianne M. Lotti Rodríguez
Juez de Apelaciones